## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT HURWITZ, on Behalf of Himself and All Others Similarly Situated, | ) ) | Case No.: |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ERIC MULLINS, CHARLES W. ADCOCK, JONATHAN C. FARBER, TOWNES G. PRESSLER, JR., JOHN A. BAILEY, JONATHAN P. CARROLL, VANGUARD NATURAL RESOURCES, LLC, and LIGHTHOUSE MERGER SUB, LLC, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Robert Hurwitz ("Plaintiff"), by his undersigned attorneys, for this Class Action Complaint, alleges upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on his personal knowledge, as follows:

## NATURE OF THE ACTION

1.      This is a unitholder class action brought by Plaintiff on behalf of the public unitholders of LRR Energy, L.P. ("LRR Energy" or the "Company") against its Board of Directors (the "Board" or the "Individual Defendants"), Vanguard Natural Resources, LLC ("Vanguard"), and Lighthouse Merger Sub, LLC ("Merger Sub").  This action seeks to enjoin the Individual Defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at an unfair price through an unfair process (the "Proposed Acquisition").

2.      Defendants announced on April 20, 2015, that the Board had agreed to enter into a Purchase Agreement and Plan of Merger (the "Merger Agreement") pursuant to which a subsidiary of Vanguard will merge into LRR Energy, and, at the same time, Vanguard will acquire LRE GP, LLC ("LRE GP"), the general partner of LRR Energy (collectively, "LRR

Energy," or "LRE"), for total consideration of $251 million in Vanguard common units and the assumption of LRE's net debt of $288 million.  The Proposed Acquisition will be a tax-free unit-for-unit transaction with an exchange ratio of 0.55 Vanguard common units per LRR Energy common unit.[1]  The consideration to be received by LRE unitholders is valued at $8.93 per LRR Energy common unit (the "Proposed Consideration") based on Vanguard's closing price as of April 20, 2015, representing a mere 13% premium to LRR Energy's closing price on April 20, 2015.[2]

3.     If the transactions contemplated by the Eagle Rock merger agreement are consummated, immediately following the later to occur of the transactions contemplated by the merger agreement and the transactions contemplated by the Eagle Rock merger agreement, it is expected that LRE unitholders will own approximately 11.9% of the outstanding common units of Vanguard.  If, however, the transactions contemplated by the Eagle Rock merger agreement are not consummated, immediately following the completion of the transactions contemplated by the merger agreement, it is expected that LRE unitholders will own approximately 15.2% of the outstanding common units of Vanguard.

4.     LRR Energy is a Delaware limited partnership formed in April 2011 by Lime Rock Management LP, an affiliate of Lime Rock Resources to operate, acquire, exploit, and

---

[1] Vanguard will also acquire all of the limited liability company interests in LRE GP in exchange for an additional 12,320 Vanguard common units.

[2] Vanguard has also entered into an Agreement and Plan of Merger (the "Eagle Rock merger agreement") with Eagle Rock Energy Partners, L.P. ("Eagle Rock") and Eagle Rock Energy GP, L.P., the general partner of Eagle Rock ("Eagle Rock GP"), pursuant to which an indirect subsidiary of Vanguard will merge with and into Eagle Rock, with Eagle Rock continuing as the surviving entity and a wholly owned indirect subsidiary of Vanguard (the "Eagle Rock merger"). Eagle Rock unitholders will receive 28.75 million Vanguard common units if the Eagle Rock merger is consummated.  Prior to entering into the Eagle Rock merger agreement, Vanguard obtained the consent of the board of directors of LRE GP, pursuant to a letter agreement by and among Vanguard and LRE.

develop producing oil and natural gas properties in North America. LRR Energy's properties are located in the Permian Basin region in West Texas and Southeast New Mexico, the Mid-Continent region in Oklahoma and East Texas and the Gulf Coast region in Texas.

5.      Although oil and gas prices have recently declined, given their cyclical nature, the Company is well-poised to capitalize on the next upswing given its recent growth and reserve increases.  As of December 31, 2014, LRR Energy had an impressive 33.8 million barrels of oil equivalent ("MMBoe") of estimated proved reserves, with substantial increases since 2013. More, even with currently depressed commodity prices, LRR Energy has demonstrated impressive financial success.  For example, on April 30, 2015, the Company announced that revenues for the first quarter of 2015 skyrocketed 39.1% to $36.2 million compared to the first quarter of 2014.  In addition, the Company has beaten consensus analyst estimates for sales in three out of the past four quarters, and easily surpassed earnings estimates in both of the last two quarters.

6.      Unfortunately, the Individual Defendants are attempting to prevent Plaintiff and the Class (as defined herein) from realizing the benefits of the Company's bright future by inexplicably deciding to sell LRR Energy now in exchange for the grossly inadequate Proposed Consideration—thus breaching their fiduciary duty to maximize unitholder value in connection with the Proposed Acquisition.  The inadequacy of the Proposed Consideration is particularly evident when considering that before the deal was announced, at least two market analysts had set a target price for LRR Energy units above the offer price of $8.93.  Further, the Proposed Consideration drastically undervalues the Company when compared to the multiples its peers have to trailing revenues and forward revenues.

7.      In addition, the Proposed Acquisition is rife with significant conflicts of interest. For example, all Board members will receive accelerated vesting of unvested options worth more

than half a million dollars, and many of the Board members will unload massive illiquid holdings in LRR Energy that they would not have otherwise been able to sell without the severe accompanying depression in unit price that a large-scale sale of LRR Energy units would create.

8.      In order to lock up the Proposed Acquisition on unfair terms, the Board adopted various preclusive and onerous deal protection devices, which are set forth in the Merger Agreement dated April 20, 2015.  These provisions, which collectively preclude any competing offers for the Company from emerging, include: (i) a termination fee totaling $7.288 million if the Company accepts a competing bid; (ii) a "no-solicitation" clause; and (iii) a three business-day matching rights period during which Vanguard can match any superior proposal received by the Company.  These provisions unreasonably inhibit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of LRR Energy.

9.      Worse, in an attempt to secure unitholder support for the inadequate Proposed Acquisition, on June 3, 2015, Vanguard filed a Registration Statement on Form S-4 with the U.S. Securities and Exchange Commission ("SEC"), which was subsequently amended on July 9, 2015, July 24, 2015, and again on August 7, 2015.  The August 7, 2015 Form S-4/A (hereafter the "Proxy"), which recommends that LRR Energy unitholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the flawed sales process for the Company, the valuation analysis prepared by the Company's financial advisors, the unfair Proposed Consideration offered in the transaction, and the actual intrinsic value of the Company and Vanguard both on a stand-alone basis and pro forma basis, in contravention of sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

10.     In short, the Proposed Acquisition is designed to unlawfully divest LRR Energy unitholders of the Company's valuable assets for grossly inadequate consideration and without

fully disclosing all material information concerning the transaction to unitholders.  Plaintiff seeks injunctive relief preventing consummation of the Proposed Acquisition, unless and until defendants' Exchange Act violations are appropriately remedied.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the claims asserted herein for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.  This Court has supplemental jurisdiction under 28 U.S.C. §1367.

12.    This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Non-defendant LRR Energy is a Delaware corporation with principal executive offices located at Heritage Plaza, 1111 Bagby Street, Suite 4600, Houston, Texas.

## THE PARTIES

14.    Plaintiff is and has been a unitholder of LRR Energy at all times relevant hereto.

15.    Defendant Eric Mullins ("Mullins") is LRR Energy's Co-Chief Executive Officer, Chairman of the Board, and a director and has been since May 2011.

16.    Defendant Charles W. Adcock is LRR Energy's Co-Chief Executive Officer and a director and has been since May 2011.

17.    Defendant Jonathan C. Farber is an LRR Energy director and has been since May 2011.

18.    Defendant Townes G. Pressler, Jr. is an LRR Energy director and has been since

May 2011.

19.     Defendant John A. Bailey is an LRR Energy director and has been since November 2011.

20.     Defendant Jonathan P. Carroll is an LRR Energy director and has been since January 2014.

21.     Defendant Vanguard is a Delaware limited liability company with principal executive offices located at 5847 San Felipe, Suite 3000, Houston, Texas.  Defendant Vanguard focuses on the acquisition and development of oil and natural gas properties in the United States.

22.     Defendant Merger Sub is a Delaware limited liability company and a wholly owned indirect subsidiary of defendant Vanguard.  Upon completion of the Proposed Acquisition, defendant Merger Sub will merge with and into LRR Energy and cease its separate corporate existence.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other public unitholders of LRR Energy that have been or will be harmed by defendants' conduct described herein (the "Class").  Excluded from the Class are defendants and any individual or entity affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  According to the Merger Agreement, there were over twenty-eight million units of LRR Energy outstanding as of April 17, 2015.

26.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.   The common questions include the following:

(a)     whether defendants have violated sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder by disseminating a materially false and misleading Proxy to LRR Energy unitholders;

(b)     whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(c)     whether defendants are unjustly enriching themselves and other insiders or affiliates of the Company at the expense of LRR Energy unitholders and/or their fiduciary obligations; and

(d)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

27.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

28.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately represent and protect the interests of the Class.

29.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

30.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

31.     Defendants have acted, or failed to act, on grounds generally applicable to the

Class with respect to the matters complained of herein, thereby making appropriate the relief

sought herein with respect to the Class as a whole.

## THE FLAWED SALES PROCESS

32.     As set forth in the Proxy, the Proposed Acquisition is the result of a flawed

process that was tilted in favor of Vanguard from the outset.

33.     In early May 2013, Scott W. Smith, President and Chief Executive Officer of

Vanguard, approached defendant Mullins to discuss a potential business combination between

Vanguard and LRR Energy.  Thereafter, the two companies quickly entered into a confidentiality

agreement and LRR Energy began sharing confidential financial information with Vanguard.

Vanguard submitted a proposal to acquire the Company in the middle of 2013, but LRR Energy

turned it down because it failed to "account [for the Company's] future growth potential."  The

Proxy does not disclose whether the two companies communicated again between the middle of

2013 and the beginning of 2015.

34.     In January 2015, LRE management met with and engaged Tudor, Pickering, Holt

& Co. Advisors, LLC ("TPH") to seek out potential strategic alternatives for the Company.  On

January 12, 2015, LRE and TPH agreed on a preliminary list of an undisclosed number of

companies to contact.  The initial list comprised of companies that were not upstream master

limited partnerships ("MLPs"), thus excluding Vanguard.

35.     At some undisclosed time over the following two months, TPH contacted a

private exploration and production company which the Proxy refers to as Company A, which

was purportedly on the preliminary list set on January 12, 2015.  According to the Proxy, by the

middle of April 2015, both LRE and Company A made "several non-binding proposals" with

respect to various potential transactions between the two companies. The Proxy does not disclose any financial details concerning those proposals.

36.     On March 4, 2015, LRE management instructed TPH to "canvas interest among upstream MLPs for a potential merger transaction." It appears that the Board was not involved in selecting any potential MLPs to be contacted.

37.     On March 5, 2015, TPH began contacting ten upstream MLPs and discussing the Company's strategic alternative process with them. For each of these companies, TPH further set an arbitrary bid date of April 1, 2015, just a few weeks after TPH's initial contact. Vanguard was the only company that submitted a written proposal during this time, which is unsurprising given that Vanguard had a substantial head start on the process and had already spent months reviewing LRE's confidential financial information in 2013.

38.     Throughout the process, twenty-one companies requested confidentiality agreements from LRE in order to evaluate potential business combinations. For some undisclosed reason, however, LRE only executed confidentiality agreements with thirteen companies. The Proxy does not disclose the Board's reason for failing to enter into confidentiality agreements with the eight other interested companies.

39.     As noted above, Company A continued to make proposals through the middle of April 2015. The Proxy, however, does not provide any details whatsoever concerning Company A's then current proposal, or the Board's reasons for rejecting it in favor of Vanguard's proposal.

40.     Ultimately, defendants agreed to the Proposed Acquisition with Vanguard for $8.93 per unit. On April 20, 2015, the Board approved the Merger Agreement which LRR Energy and Vanguard executed.

41.     Following the execution of the Merger Agreement, on May 21, 2015, Vanguard entered into the Eagle Rock merger agreement.

## THE PROPOSED ACQUISITION AND PRECLUSIVE MERGER AGREEMENT

42.     On April 20, 2015, LRR Energy issued a press release announcing the Proposed

Acquisition.  The press release stated, in relevant part:

> HOUSTON--(BUSINESS WIRE)--Apr. 20, 2015-- Vanguard Natural Resources,
> LLC (NASDAQ:VNR) ("Vanguard" or "the Company") and LRR Energy, L.P.
> (NYSE:LRE) today announced that they have entered into a Purchase Agreement
> and Plan of Merger pursuant to which a subsidiary of Vanguard will merge into
> LRR Energy, L.P. and, at the same time, Vanguard will acquire LRE GP, LLC,
> the general partner of LRR Energy, L.P. (collectively, "LRR Energy", or "LRE")
> for total consideration of $251 million in Vanguard common units and the
> assumption of LRE's net debt of $288 million. As a result of the transaction, LRR
> Energy and its general partner will become wholly owned subsidiaries of
> Vanguard. The transaction, which has been approved by the boards of directors of
> both companies, including the Conflicts Committee of the Board of Directors of
> LRR Energy, will be a tax-free unit-for-unit transaction with an exchange ratio of
> 0.55 Vanguard common units per LRE common unit. In addition, Vanguard will
> acquire all of the limited liability company interests in LRE GP, LLC in exchange
> for 12,320 Vanguard common units. The consideration to be received by LRE
> unitholders is valued at $8.93 per LRR Energy common unit based on Vanguard's
> closing price as of April 20, 2015, representing a 13% premium to LRR Energy's
> closing price on April 20, 2015, and a 19% premium to LRR Energy's ten day
> volume weighted average price. Vanguard and LRR Energy expect the transaction
> to close in the third quarter of 2015. The merger is subject to customary closing
> conditions, including the approval of the LRR Energy unitholders. Affiliates of
> Lime Rock Resources, LRE's largest unitholder (owning over 30 percent of its
> outstanding equity), have agreed to support and vote in favor of the transaction.
>
> Scott W. Smith, Vanguard's President and Chief Executive Officer commented,
> "The transaction we announced today is a great opportunity for the Company and
> our unitholders. The assets being acquired are attractive bolt-ons to our Permian
> and Arkoma basin operations and have an inventory of development projects that
> generate good returns even in the current commodity environment. We believe
> this transaction should have a positive impact on all aspects of our business. We
> look forward to welcoming the existing LRE unitholders into Vanguard."
>
> Eric Mullins, Chairman and Co-Chief Executive Officer of LRR Energy
> commented, "We are pleased to announce our pending merger with Vanguard.
> We have great respect for Vanguard's management team, which has a strong track
> record of creating value for its unitholders." Charlie Adcock, Co-Chief Executive
> Officer of LRR Energy, noted, "We believe the transaction is compelling for LRR
> Energy unitholders for many reasons and that the strategic combination will
> deliver significant value in the future for our unitholders."

43.     On April 22, 2015, the Company filed a Current Report on Form 8-K with the SEC wherein it disclosed the Merger Agreement.  The Merger Agreement contains a number of draconian deal protection devices designed to preclude any competing bids for LRR Energy from emerging in the period following the announcement of the Proposed Acquisition, which effectively locked-up the deal in favor of Vanguard.  As the Individual Defendants were duty bound to maximize unitholder value in connection with the Proposed Acquisition, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

44.     Under the Merger Agreement, LRR Energy is subject to a "no-solicitation" clause that prohibits the Company from seeking a superior offer for its unitholders.  Specifically, section 2.1 of the Voting and Support Agreement, attached as Annex A to the Merger Agreement states, in pertinent part:

> **Restricted Activities**. Prior to the Expiration Date, no Unitholder shall, and each Unitholder shall cause its Affiliates and Representatives not to, directly or indirectly, (a) initiate, solicit, knowingly encourage or knowingly facilitate any inquiry, proposal or offer that would reasonably be expected to lead to an Alternative Proposal, (b) enter into or participate in any discussions or negotiations regarding, or furnish to any Person any non-public information with respect to, or that could reasonably be expected to lead to, any Alternative Proposal, (c) take any action to release or permit the release of any Person from, or amend, waive or permit the amendment or waiver of any provision of, any "standstill" or similar agreement or provision to which the Partnership is or becomes a party or under which the Partnership has any rights, or (d) resolve or agree to do any of the foregoing (the activities specified in clauses (a) through (d) being hereinafter referred to as the "***Restricted Activities***"). For the purposes of this Agreement, "***Representatives***" means, with respect to any Person, the officers, directors, employees, agents, advisors and other representatives of such Person (in each case, acting in their capacity as such to such Person).

45.     Although the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision would require a potential acquiror to first make an unsolicited offer.  Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer

that the Company reasonably expects to lead to a superior deal, no other bidders will emerge to make a superior proposal.

46.     Furthermore, under section 7.3(e) of the Merger Agreement, should it receive an unsolicited bid, the Company must notify Vanguard of the bidder's offer.  Thereafter, should the Board determine that the unsolicited offer is superior, Vanguard is granted three business days to negotiate with the Company and allow Vanguard to amend the Merger Agreement so that the unsolicited bid is no longer superior.

47.     Finally, pursuant to section 9.4 of the Merger Agreement, LRR Energy must pay Vanguard a $7.288 million termination fee if it accepts a superior proposal.  This additional consideration would be paid directly to Vanguard rather than LRR Energy unitholders, thereby making it even more difficult for any competing bidder to acquire the Company.

48.     These onerous and preclusive deal protection devices, which will operate to unreasonably deter and discourage superior offers from other interested parties, were agreed to by the Individual Defendants to help secure the personal benefits and unfair profits afforded to them.  By negotiating for such personal benefits in connection with the consummation of the Proposed Acquisition, the Individual Defendants placed their own personal interests before those of the Company's unitholders thus resulting in the Proposed Acquisition being presented to LRR Energy unitholders at an untenable and inadequate offer price.

## DEFENDANTS' INTERESTS IN THE PROPOSED ACQUISITION

49.     The Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.  For example, as shown in the below table, each of the Individual Defendants will receive accelerated equity benefits from the Proposed Acquisition totaling over half a million dollars, and will also be able to unload over $78 million worth of illiquid holdings in LRR

Energy that they would not have otherwise been able to sell without the severe accompanying depression in unit price that a large-scale sale of LRR Energy units would create:

| Defendant | Common Share Consideration | Accelerated Consideration | Total Merger Consideration |
|---|---|---|---|
| Eric Mullins | $1,030,968.50 | $0.00 | $1,030,968.50 |
| Charles W. Adcock | $133,950.00 | $0.00 | $133,950.00 |
| John A. Bailey | $85,138.62 | $186,807.00 | $271,945.62 |
| Jonathan P. Carroll | $8,965.72 | $151,824.00 | $160,789.72 |
| Jonathan C. Farber | $76,690,429.22 | $0.00 | $76,690,429.22 |
| Townes G. Pressler, Jr. | $26,790.00 | $0.00 | $26,790.00 |
| **Total:** | **$77,976,242.06** | **$338,631.00** | **$78,314,873.06** |

50.     By negotiating for such personal benefits in connection with the consummation of the Proposed Acquisition, the Individual Defendants placed their own personal interests before those of the Company's unitholders thus resulting in the Proposed Acquisition being presented to LRR Energy unitholders at an untenable and inadequate offer price.

## THE PROPOSED ACQUISITION UNDERVALUES LRR ENERGY

51.     The Individual Defendants' fiduciary duties require them to maximize unitholder value when entering into a change-in-control transaction such as the Proposed Acquisition. Here, however, the Individual Defendants' eagerness to enter into an acquisition with Vanguard (and secure the aforementioned personal financial benefits for which they had negotiated) resulted in a sales process that was not designed to obtain the maximum price for LRR Energy unitholders.  As a result, the Company's public unitholders have been, and will continue to be, denied the fair process and arm's-length negotiated terms to which they are entitled to in a sale of their Company.  Indeed, the Proposed Consideration does not reflect the true inherent value of the Company as known to the Individual Defendants and Vanguard.

**LRR Energy Is Well-Poised for Growth as Oil and Gas Prices Increase**

52.     Although oil and gas prices have recently declined, given their cyclical nature, the Company is well-poised to capitalize on the next upswing given its recent growth and reserve

increases.  In fact, as of December 31, 2014, LRR Energy had an impressive 33.8 MMBoe of estimated proved reserves, of which approximately 88% were proved developed reserves.  More, even *excluding* the impact of production during 2014 and reserve adds associated with a recent successful acquisition of an additional oil and natural gas field in Oklahoma, proved reserves increased 12% in 2014 compared to 2013 due to reserve additions and revisions.  As a result of the Proposed Acquisition, Vanguard, rather than LRR Energy's unitholders, will reap the benefits when gas and oil prices rebound.  Indeed, after the Proposed Acquisition was announced, Vanguard's Executive Vice President and Chief Financial Officer, Richard Robert, boasted on a May 26, 2015 conference call, that upon the closing of the deal, Vanguard will be "well positioned when the commodity price recovers."

53.     Even with currently depressed commodity prices, LRR Energy has demonstrated impressive financial success.  On April 30, 2015, the Company announced that revenues for the first quarter of 2015 skyrocketed 39.1% to $36.2 million compared to the first quarter of 2014.  More, the Company has beat consensus analyst estimates for sales in three out of the past four quarters, and easily surpassed earnings estimates in both of the last two quarters.  Two quarters ago, the Company was expected to earn $0.32 per unit, while it actually produced earnings of $0.36 per unit, a beat of 12.5%.  Meanwhile, for the most recent quarter, the Company looked to deliver earnings of $0.24 per unit, when it actually saw earnings of $0.45 per unit instead, representing a staggering 87.5% positive surprise.

**An Analysis of Comparable Companies and Similar Transactions Provides Significantly Greater Premiums**

54.     Compared to the Company's peers, the Proposed Consideration of $8.93 per unit undervalues LRR Energy.  A common way to value a company is to look at its multiple to its enterprise value ("EV") to the last twelve months' ("LTM") earnings before interest, taxes, depreciation, and amortization ("EBITDA").  The Company's peers have an EV that is between

4.03x to 4.57x their LTM revenues.  Applying these same multiples to the Company results in a per unit value between $10.43 and $13.22—16.7% to 48% higher than the Proposed Consideration.

55.     Comparing LRR Energy to the Company's peers' EV based on future EBITDA also demonstrates the inadequacy of the Proposed Consideration.  Using the same analysis above, only replacing fiscal year 2015 revenue for LTM EBITDA results in a multiple range of 7.08x to 8.23x.  Applying these same multiples to the Company results in a per unit value of between $9.52 to $12.73—6.6% to 42.5% higher than the Proposed Consideration.

56.     The $8.93 per unit price is also insufficient relative to similar transactions in the oil and gas industry.  Notably, the one-day and one-week price premiums reflected in the Proposed Acquisition, only 12.6% and 15.1% respectively, are considerably lower than  the median one-day and one-week premiums achieved in like transactions in the oil and gas exploration and production industry over the last three years, approximately 33.5% and 34.6%, respectively.

**Multiple Analysts Previously Set Targets Above the Offer Price**

57.     The inadequacy of the Proposed Consideration is further highlighted by the targets set by various analysts.  In the last several months prior to the announced merger, at least two analysts set targets above the $8.93 per unit offer price.  On January 16, 2015, Landenberg Thalmann & Co set a target price for LRR Energy of $10 per unit.  On February 3, 2015, RBC Capital Markets set a target price for LRR Energy of $9.  These two analysts maintained targets above the $8.93 per unit offer price immediately prior to the announced merger.

## THE FALSE AND MATERIALLY MISLEADING PROXY

58.     In order to secure unitholder approval of the unfair Proposed Acquisition, defendants filed the false and materially misleading Proxy with the SEC on August 7, 2015.  The

Proxy misrepresents and/or omits material information necessary for LRR Energy unitholders to make an informed decision whether to vote in favor of the Proposed Acquisition. Specifically, as set forth below, the Proxy fails to provide Company unitholders with material information and/or provides them with materially misleading information concerning the flawed and self-serving sales process for the Company, the valuation analysis prepared by the Company's financial advisors, the unfair Proposed Consideration offered in the transaction, and the actual intrinsic value of the Company and Vanguard both on a stand-alone basis and pro forma basis,

**Disclosure Deficiencies Concerning the Conflicted Sales Process**

59. With respect to the sales process that led to the Proposed Acquisition, the Background of the Merger section contained on pages 67-76 of the Proxy is materially deficient in that it fails to disclose:

(a)    the composition of Company A's proved developed reserves in terms of gas, oil, and natural gas liquids;

(b)    the specific assets which LRE proposed acquiring from Company A and the proposed acquisition terms;

(c)    the specific terms of the latest proposal from Company A as purported, discussed, and considered by the LRE GP board on April 17, 2015; and

(d)    the estimated impact on the pro forma combined company of LRE and Vanguard from the proposed Eagle Rock merger as reviewed by Simmons & Company International ("Simmons"), financial advisor to LRE GP.

60. The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)    from page 69 of the Proxy:

As a result of this strategic alternatives process, from late January 2015 through the middle of April 2015, LRE management engaged in extensive discussions

with Company A. Company A had proved developed reserves that LRE management believed would complement LRE's existing asset base. LRE management and representatives from Company A, with the assistance of their respective financial advisors, conducted due diligence investigations of Company A's and LRE's assets and operations, respectively. LRE and Company A engaged in negotiations regarding a contemplated transaction pursuant to which LRE would acquire assets from Company A in exchange for LRE common units, an interest in LRE GP and LRE's assumption of Company A's outstanding debt. Both LRE and Company A made several non-binding proposals with respect to various forms of this proposed transaction.

    (b)    from page 71 of the Proxy:

On April 17, 2015, the board of directors of LRE GP held a special meeting. Representatives from LRE management, TPH, Andrews Kurth and Richards Layton attended the meeting as invited guests. Mr. Mullins provided the board of directors of LRE GP with an update of the negotiation process with Vanguard and mentioned that he expected to receive a revised written proposal from Vanguard without a due diligence contingency soon. The board of directors of LRE GP also discussed and considered the latest proposal from Company A. Representatives of TPH reviewed for the board of directors of LRE GP preliminary financial analyses for the proposed transactions with Vanguard and Company A. Mr. Adcock noted that LRE management considered upstream MLPs as potential merger parties. Of the upstream MLPs, LRE management felt that Vanguard and one other upstream MLP were potentially the best fit for a merger with LRE and discussed various issues with the board of directors of LRE GP.  Richards Layton provided the board of directors of LRE GP with a presentation summarizing fiduciary duties and responsibilities of the board of directors of LRE GP under Delaware law and discussed the contractual standards under LRE's limited partnership agreement. Andrews Kurth then discussed the terms of the merger agreement and related documents with the board of directors of LRE GP, highlighting the key terms, conditions and provisions of such agreements. The board of directors of LRE GP unanimously approved a resolution authorizing the LRE GP conflicts committee to review Vanguard's current proposal.

    (c)    from page 75 of the Proxy:

Also on May 20, 2015, the LRE GP conflicts committee met telephonically with its financial and legal advisors. Simmons provided the LRE GP conflicts committee with its final analysis of the impact of the proposed Eagle Rock merger on the pro forma combined company of LRE and Vanguard. Simmons described the valuation methodologies being employed and the other analyses being performed by Simmons, and the results thereof, in connection with its evaluation of the fairness, from a financial point of view, of the terms of the Eagle Rock merger to the unaffiliated LRE unitholders. After discussion, Simmons delivered its oral opinion, which opinion was later confirmed by delivery of its written opinion dated as of such date, that, based on and subject to the assumptions and limitations set forth therein, the terms of the Eagle Rock merger contemplated by

the Eagle Rock merger agreement were fair, from a financial point of view, to the unaffiliated LRE unitholders. Representatives of Latham summarized the material terms of the Eagle Rock merger agreement and the related consent. After hearing from its advisors and further review and discussion, the LRE GP conflicts committee unanimously determined to provide its consent under the LRE merger agreement to the proposed Eagle Rock merger and recommended that the full LRE Board provide its consent to the Eagle Rock merger. In providing its approval, the LRE GP conflicts committee intended such approval to constitute special approval for purposes of the LRE partnership agreement.

61.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶60 because they give unitholders a materially incomplete and distorted picture of the sales process underlying the Proposed Acquisition, the various alternatives available to (and considered by) defendants other than the Proposed Acquisition, and the efforts taken (or not taken) to ensure that the synergistic value of the Proposed Acquisition was accurately reflected in the Proposed Consideration to be received by unitholders.  Without this omitted information, LRR Energy unitholders cannot make a fully-informed decision whether to vote to approve the Proposed Acquisition.

**Disclosure Deficiencies Concerning the Valuation Analysis Prepared by TPH**

62.     The Proxy cites to and annexes the opinion of LRR Energy's financial advisor TPH, which concludes that the consideration to be received by LRR Energy unitholders in the Proposed Acquisition is fair, from a financial point of view.  However, the Proxy fails to disclose material information about TPH's opinion and methodology, rendering it impossible for Company unitholders to effectively evaluate, and determine how to vote with respect to, the Proposed Acquisition.

63.     The description of TPH's *Net Asset Value Analysis* on page 93 of the Proxy is materially deficient because it fails to disclose:

(a)     the year(s) TPH considered to be the end of the economic life of LRE's proved, probable, and possible ("3P") reserves;

(b)      the individual inputs and assumptions TPH used for the selection of

discount rates of 8% to 10%; and

(c)      the separate present values of cash flows generated by estimated 3P

reserves as well as the present values of future estimated effects of hedging.

64.      The omission of this information renders the following statements in the Proxy

false and/or materially misleading in contravention of the Exchange Act:

(a)      from page 93 of the Proxy:

*Net Asset Value Analysis*

TPH performed an illustrative Net Asset Value analysis of LRE. TPH calculated
the present value of the pre-tax future cash flows that LRE could be expected to
generate from its existing base of estimated proved, probable and possible ("3P")
reserves, in each case, to the end of their economic life, as of March 31, 2015,
contained in the LRE Management 3P Reserve Estimates. In performing this
analysis, TPH applied discount rates ranging from 8% to 10% to the projected
cash flows. TPH estimated Net Asset Value as the sum of (i) the present value of
the cash flows generated by these estimated 3P reserves plus (ii) the present value
of the future estimated effects of hedging less (iii) net debt (total debt less cash).
The commodity prices utilized to derive the cash flows through 2019 were based
on (i) Strip 1, (ii) Research Consensus 1 and (iii) Ten-Year Average 1 prices. The
commodity prices utilized to derive cash flows in 2019 and beyond were based on
2019 commodity prices. Taken together, the foregoing sensitivities applied to the
Net Asset Value calculation for 3P reserves resulted in an implied LRE valuation
range of $2.27 to $11.24 per unit.

65.      These statements in the Proxy are rendered false and/or misleading by the

omissions identified in ¶64 because: (i) unitholders cannot adequately determine whether TPH's

assumption as to the economic life of the 3P reserves is accurate or appropriate under the

circumstances which, in turn, impacts the overall implied value of the Company; and (ii) it is

well established that the calculation of a discount rate requires the application of a number of

objective inputs and assumptions and the resulting rate (or range of rates) selected greatly

impacts the resulting value derived from an analysis such as this.

66.     The description of TPH's *Discounted Cash Flow Analysis* on pages 93-94 of the Proxy is materially deficient because it fails to disclose:

(a)     the implied perpetuity growth rates for each of LRE and Vanguard derived by TPH from the analysis;

(b)     the individual inputs and assumptions that TPH used in selecting the discount rate range of 8% to 10% for each of LRE and Vanguard as used in this analysis; and

(c)     the separate values of the present values of the cash flows and terminal value and of the present value of the future estimated effects of hedging for each of LRE and Vanguard.

67.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 93-94 of the Proxy:

TPH performed a discounted cash flow analysis of LRE using the LRE Forecasts through 2019. The commodity prices utilized to derive the cash flows were based on (i) Strip 1, (ii) Research Consensus 1 and (iii) Ten-Year Average 1 prices. Terminal values were calculated at December 31, 2018 using a multiple range of 5.0x to 8.0x 2019 estimated EBITDA. In performing this analysis, TPH applied discount rates ranging from 8% to 10% to the pre-tax free cash flows and the terminal value. TPH estimated the common equity value as (i) the present value of the cash flows and terminal value plus (ii) the present value of the future estimated effects of hedging less (iii) net debt (total debt less cash). Taken together, the foregoing sensitivities resulted in an implied LRE  valuation range of $(1.14) to $8.22 per unit.

Additionally, TPH performed a discounted cash flow analysis of Vanguard using a methodology generally consistent with that  used to calculate the discounted cash flow of LRE using the LRE Forecasts through 2019. TPH estimated the common equity value as the (i) present value of the cash flows and terminal value plus (ii) the present value of the future estimated effects of hedging less (iii) net debt (total debt less cash) and (iv) preferred equity. Terminal values were calculated at December 31, 2018 using a multiple range of 6.0x to 9.0x 2019 estimated EBITA. Taken together, the foregoing sensitivities resulted in an implied Vanguard valuation range of $(2.24) to $29.05 per unit.

68.     The Proxy is false and/or misleading due to the omissions identified in ¶67 for a variety of reasons.  First, as discussed above with respect to the Net Asset Value Analysis: (i) the calculation of a discount rate requires the application of a number of objective inputs and assumptions; and (ii) the ultimate discount rate selected often has the single largest impact on a resulting discounted cash flow ("DCF") valuation.  Accordingly, LRR Energy unitholders must be provided with sufficient information to determine the reasonableness of TPH's discretionary use of the inputs and assumptions used to compute the selected discount rate range.  Second, because DCF analyses are extremely sensitive to derivations in the inputs used (particularly those impacting projected cash flows), it is imperative that unitholders be provided with the information underlying the implied perpetuity growth rate range selected.  Without the aforementioned omitted information, LRR Energy unitholders cannot evaluate for themselves whether the analysis was performed properly and, in turn, determine what weight, if any, they should place on the analysis (and TPH's fairness opinion as a whole) when deciding whether to vote to approve the Proposed Acquisition.

69.     The description of TPH's *Relative Contribution Analysis* on page 94 of the Proxy is materially deficient because it fails to disclose:

(a)     the specific levels of contribution of each of LRE and Vanguard to the combined entity for each of the specific business metrics listed; and

(b)     the ranges of implied exchange ratios for each of the individual business metrics reviewed by TPH.

70.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 94 of the Proxy:

TPH performed an analysis of the relative contributions of LRE and Vanguard to the combined entity resulting from the merger, without giving effect to any synergies, of select business metrics, including:

• 2015 first quarter daily production and full-year 2015 and 2016 estimated daily production based on the LRE Forecasts;

• proved reserves based on the LRE 2014 SEC Reserve Report and the Vanguard 2014 SEC Reserve Report;

• 2014 distributable cash flow and 2015 and 2016 estimated distributable cash flow based on the LRE Forecasts;

• 2014 EBITDA and 2015 and 2016 estimated EBITDA based on the LRE Forecasts;

• 2014 unhedged EBITDA and 2015 and 2016 estimated unhedged EBITDA based on the LRE Forecasts;

• SEC PV-10 of proved reserves;

• discounted cash flows; and

• 1P Net Asset Value based on the estimated 1P reserves in the LRE Management 3P Reserve Estimates and the Vanguard Management 1P Reserve Estimates.

For commodity price sensitivities, TPH applied (i) Strip 1, (ii) Research Consensus 1 and (iii) Ten-Year Average 1 prices. This contribution analysis implied a range of exchange ratios from 0.173x to 1.178x.

71.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶70 because, without the undisclosed information, unitholders cannot evaluate for themselves whether the respective contributions of LRE and Vanguard to the combined entity as assumed by TPH are accurate reflections of what their contributions will actually be.   In turn, this prevents unitholders from evaluating the merits of this particular analysis and, more importantly, TPH's opinion as a whole.

72.     The description of TPH's *Selected Companies Analysis* on pages 94-95 of the Proxy is materially deficient because it fails to disclose:

(a)     the following multiples for each of the selected companies observed by TPH in its analysis:

(i)      EV / 2015 estimated ("E") EBITDA;

(ii)     EV / 2016E EBITDA;

(iii)    EV / proved reserves;

(iv)     EV / first quarter 2015E daily production;

(v)      EV / 2015E daily production;

(vi)     EV / 2016E daily production;

(vii)    Price / 2015E distributable cash flow per unit; and

(viii)   Price / 2016E distributable cash flow per unit; and

(b)      whether TPH performed any type of benchmarking analysis for LRE and/or Vanguard in relation the selected companies.

73.   The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)      from pages 94-95 of the Proxy:

TPH reviewed and compared certain financial, operating and stock market information of LRE and Vanguard to corresponding information of selected publicly traded MLPs focused in the upstream oil and gas industry: Atlas Resource Partners, L.P., Breitburn Energy Partners LP, Eagle Rock Energy Partners, L.P., EV Energy Partners, L.P., Legacy Reserves LP, Linn Energy, LLC, Memorial Production Partners LP and Mid-Con Energy Partners, LP.

For the public trading analysis, select trading multiples were analyzed, including:

• enterprise value over 2015 estimated and 2016 estimated EBITDA;

• enterprise value over proved reserves;

• enterprise value over first quarter 2015 estimated daily production;

• enterprise value over 2015 estimated daily production;

• enterprise value over 2016 estimated daily production; and

• price over 2015 estimated and 2016 estimated distributable cash flow per unit.

Using Wall Street median estimates, the observed multiple ranges from the public trading analysis as compared to the resulting implied transaction multiples resulting from the proposed merger consideration are summarized below:

| | Range | Median | Merger Consideration |
|---|---|---|---|
| *Ratio of Enterprise Value Over:* | | | |
| 2015 Estimated EBITDA | 5.5x to 9.2x | 7.7x | 6.7x |
| 2016 Estimated EBITDA | 5.1x to 9.2x | 7.8x | 7.5x |
| Proved Reserves ($/Mcfe) | $  1.28 to $2.74 | $   1.95 | $   2.61 |
| First Quarter 2015 Estimated Daily Production ($/Mcfe/d) | $ 7,494 to $14,707 | $ 11,412 | $   13,470 |
| 2015 Estimated Daily Production ($/Mcfe/d) | $ 7,018 to $15,138 | $ 11,462 | $   13,609 |
| 2016 Estimated Daily Production ($/Mcfe/d) | $ 5,150 to $14,742 | $ 11,191 | $   13,594 |
| *Ratio of Unit Price Over:* | | | |
| 2015 Estimated DCF/Unit | 5.3x to 8.3x | 6.8x | 5.4x |
| 2016 Estimated DCF/Unit | 5.5x to 8.7x | 6.9x | 7.6x |

74.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶73 because such omissions are essential to unitholders' ability to properly evaluate the analysis performed by TPH.  Indeed, benchmarking metrics are used in the valuation process to help instruct the selection of pricing multiples based on the different levels of growth, profitability, etc., among the comparable companies selected.  No two companies are identical, and benchmarking plays an important role when incorporating the differences between companies into the valuation process.  Moreover, without the individually observed company multiples, unitholders cannot evaluate whether the multiple implied by the Proposed Consideration is in line with the most similar comparable companies selected by TPH.  Without the aforementioned information, unitholders' ability to understand TPH's analysis is significantly limited, rendering them unable to make a fully-informed decision whether to vote to approve the Proposed Acquisition.

75.     The description of TPH's *Selected Transactions Analysis* on pages 95 of the Proxy is materially deficient because it fails to disclose the following metrics and multiples for each of the selected transactions observed by TPH in its analysis:

(a)     Transaction value / proved reserves;

      (b)     Transaction value / daily production;

      (c)     Transaction value / LTM EBITDA;

      (d)     Transaction value / forward year 1 EBITDA; and

      (e)     Transaction value / forward year 2 EBITDA.

76.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

      (a)     from page 95 of the Proxy:

TPH reviewed certain corporate-level transactions in the upstream energy industry with greater than 90% equity consideration announced since 2010. TPH conducted a comparable transactions analysis to assess how similar transactions were valued.

• QR Energy, LP/Breitburn Energy Partners LP (2014)

• Kodiak Oil & Gas Corp./Whiting Petroleum Corporation (2014)

• Pioneer Southwest Energy Partners L.P./Pioneer Natural Resources Company (2013)

• Crimson Exploration Inc./Contango Oil & Gas Company (2013)

• Berry Petroleum Company/Linn Energy, LLC (2013)

• Encore Energy Partners LP/Vanguard Natural Resources, LLC (2011)

• American Oil & Gas Inc./Hess Corporation (2010)

• Arena Resources, Inc./SandRidge Energy, Inc. (2010)

For the selected transactions analysis, select transaction multiples were analyzed including:

• the transaction value (defined as the equity purchase price plus assumed net debt, preferred equity and minority interest obligations, if any) over proved reserves;

• the transaction value over daily production; and

• the transaction value over last 12 months', forward year 1 and forward year 2 EBITDA.

The observed multiple ranges from the comparable transaction analysis as compared to the resulting implied transaction multiples resulting from the proposed merger consideration are summarized below:

| | Range | Median | Merger Consideration |
|---|---|---|---|
| Proved Reserves ($/Mcfe) | $ 3.03 to $5.98 | $ 4.18 | $ 2.61 |
| Daily Production ($/Mcfe/d) | $ 8,779 to $29,505 | $ 25,897 | $ 13,470 |
| LTM EBITDA | 5.6x to 11.9x | 9.0x | 6.5x |
| Forward Year 1 EBITDA | 4.6x to 10.1x | 7.2x | 6.7x |
| Forward Year 2 EBITDA | 4.6x to 10.0x | 6.7x | 7.5x |

77.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶76 because, without the individually observed multiples for the chosen comparable transactions, unitholders are unable to adequately assess whether LRR Energy is being appropriately valued in relation to precedent transactions selected and reviewed by TPH. For example, without this information, unitholders have a limited ability to gauge whether the applicable multiple ranges are appropriate given the differences between LRR Energy and the subject transactions.

**Disclosure Deficiencies Concerning the Eagle Rock Opinion Rendered by TPH**

78.     The description of TPH's *Net Asset Value Analysis* on pages 98-99 of the Proxy is materially deficient because it fails to disclose:

(a)     which year(s) did TPH consider to be the end of the economic life of LRE's 3P reserves;

(b)     the individual inputs and assumptions that TPH used for the selection of discount rates of 8% to 10%; and

(c)     the separate present values of cash flows generated by estimated 3P reserves as well as the present values of future estimated effects of hedging.

79.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 98-99 of the Proxy:

TPH performed an illustrative Net Asset Value analysis of Eagle Rock. TPH calculated the present value of the pre-tax future cash flows that Eagle Rock could be expected to generate from its existing base of estimated 3P reserves, in each case, to the end of their economic life, as of March 31, 2015, contained in the Eagle Rock Management 3P Reserve Estimates. In performing this analysis, TPH applied discount rates ranging from 8% to 10% to the projected cash flows. TPH estimated Net Asset Value as the sum of (i) the present value of the cash flows generated by these estimated 3P reserves plus (ii) the present value of the future estimated effects of hedging less (iii) net debt (total debt less cash and short-term investments). The commodity prices utilized to derive the cash flows through 2019 were based on (i) Strip 2, (ii) Research Consensus 2 and (iii) Ten-Year Average 2 prices. The commodity prices utilized to derive cash flows in 2019 and beyond were based on 2019 commodity prices. Taken together, the foregoing sensitivities applied to the Net Asset Value calculation for 3P reserves resulted in an implied Eagle Rock valuation range of $2.71 to $5.21 per unit.

80.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶79 for the same reasons already discussed *supra* ¶64 with respect to the disclosure deficiencies associated with TPH's *Net Asset Value Analysis* prepared in connection with the LRE Opinion (as defined in the Proxy).

81.     The description of TPH's *Discounted Cash Flow Analysis* on page 99 of the Proxy is materially deficient because it fails to disclose:

(a)     the implied perpetuity growth rates for each of Eagle Rock and New Vanguard (as defined in the Proxy) derived by TPH from its analysis;

(b)     the individual inputs and assumptions that TPH used for the selection of discount rates of 8% to 10% for each of Eagle Rock and New Vanguard; and

(c)     the separate values of the present values of the cash flows and terminal value and of the present value of the future estimated effects of hedging for each of Eagle Rock and New Vanguard.

82.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 99 of the Proxy:

TPH performed a discounted cash flow analysis of Eagle Rock using the Eagle Rock Forecasts through 2019. The commodity prices utilized to derive the cash flows were based on (i) Strip 2, (ii) Research Consensus 2 and (iii) Ten-Year Average 2 prices. Terminal values were calculated at December 31, 2018 using a multiple range of 4.5x to 6.5x 2019 estimated EBITDA. In performing this analysis, TPH applied discount rates ranging from 8% to 10% to the pre-tax free cash flows and the terminal value. TPH estimated the common equity value as (i) the present value of the cash flows and terminal value plus (ii) the present value of the future estimated effects of hedging less (iii) net debt (total debt less cash and short-term investments). Taken together, the foregoing sensitivities resulted in an implied Eagle Rock valuation range of $1.74 to $6.42 per unit.

Additionally, TPH performed a discounted cash flow analysis of New Vanguard using a methodology generally consistent with that used to calculate the discounted cash flow of Eagle Rock using the Eagle Rock Forecasts through 2019. TPH estimated the common equity value as the (i) present value of the cash flows and terminal value plus (ii) the present value of the future estimated effects of hedging less (iii) net debt (total debt less cash) and (iv) preferred equity. Terminal values were calculated at December 31, 2018 using a multiple range of 6.0x to 9.0x 2019 estimated EBITDA. Taken together, the foregoing sensitivities resulted in an implied Vanguard valuation range of $(2.16) to $26.13 per unit.

83.     The Proxy is false and/or misleading due to the omissions identified in ¶82 for the same reasons already discussed *supra* ¶67 with respect to the disclosure deficiencies associated with TPH's *Discounted Cash Flow Analysis* prepared in connection with the LRE Opinion.

84.     The description of TPH's *Relative Contribution Analysis* on page 99 of the Proxy is materially deficient because it fails to disclose the specific levels of contribution of each of Eagle Rock and New Vanguard to the combined entity for each of the specific business metrics listed.

85.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 99 of the Proxy:

TPH performed an analysis of the relative contributions of Eagle Rock and New Vanguard to the combined entity resulting from the Eagle Rock merger, without giving effect to any synergies, of select business metrics, including:

• 2015 first quarter daily production and 2015 (August – December), 2016 and 2017 estimated daily production based on the Eagle Rock Forecasts;

• proved reserves based on the Eagle Rock 2014 SEC Reserve Report, for Eagle Rock's contribution, and the Vanguard 2014 SEC Reserve Report and the LRE 2014 SEC Reserve Report, for New Vanguard's contribution;

• 2014 distributable cash flow and 2015 (August – December), 2016 and 2017 estimated distributable cash flow based on the Eagle Rock Forecasts;

• 2014 EBITDA and 2015 (August – December), 2016 and 2017 estimated EBITDA based on the Eagle Rock Forecasts;

• 2014 unhedged EBITDA and 2015 (August – December), 2016 and 2017 estimated unhedged EBITDA based on the Eagle Rock Forecasts;

• SEC PV-10 of proved reserves;

• discounted cash flows; and

• 1P Net Asset Value based on the estimated 1P reserves in the Eagle Rock Management 3P Reserve Estimates, for Eagle Rock's contribution, and the estimated 1P reserves in the LRE Management 3P Reserve Estimates and the Vanguard Management 1P Reserve Estimates, for New Vanguard's contribution.

For commodity price sensitivities, TPH applied (i) Strip 2, (ii) Research Consensus 2 and (iii) Ten-Year Average 2 prices. This contribution analysis implied a range of exchange ratios from 0.117x to 1.076x.

86.    These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶85 for the same reasons already discussed *supra* ¶70 with respect to the disclosure deficiencies associated with TPH's *Relative Contribution Analysis* prepared in connection with the LRE Opinion.

87.    The description of TPH's *Selected Companies Analysis* on page 100 of the Proxy is materially deficient because it fails to disclose:

(a)    the following multiples for each of the selected companies observed by TPH in its analysis:

(i)    EV / fourth quarter annualized 2015E EBITDA;

(ii)    EV / 2016E EBITDA;

(iii)    EV / proved reserves;

(iv)    EV / first quarter 2015E daily production;

(v)     EV / 2015E daily production;

(vi)    EV / 2016E daily production;

(vii)   Price / fourth quarter 2015E distributable cash flow per unit; and

(viii)  Price / 2016E distributable cash flow per unit; and

(b)     whether TPH performed any type of benchmarking analysis for Eagle Rock and/or New Vanguard in relation the selected companies.

88.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 100 of the Proxy:

TPH reviewed and compared certain financial, operating and stock market information of Eagle Rock and New Vanguard to corresponding information of selected publicly traded MLPs focused in the upstream oil and gas industry: Atlas Resource Partners, L.P., Breitburn Energy Partners LP, EV Energy Partners, L.P., Legacy Reserves LP, Linn Energy, LLC, Memorial Production Partners LP and Mid-Con Energy Partners, LP.

For the public trading analysis, select trading multiples were analyzed, including:

• enterprise value over fourth quarter annualized 2015 estimated and full-year 2016 estimated EBITDA;

• enterprise value over proved reserves;

• enterprise value over first quarter 2015 daily production;

• enterprise value over 2015 estimated daily production;

• enterprise value over 2016 estimated daily production; and

• price over fourth quarter 2015 estimated and 2016 estimated distributable cash flow per unit.

Using Wall Street median estimates, the observed multiple ranges from the public trading analysis as compared to the resulting implied transaction multiples resulting from the proposed Eagle Rock merger consideration are summarized below:

| | Range | Median | Eagle Rock Merger Consideration |
|---|---|---|---|
| *Ratio of Enterprise Value Over:* | | | |
| Fourth Quarter Annualized 2015 Estimated EBITDA | 4.9x to 8.5x | 7.4x | 5.1x |
| 2016 Estimated EBITDA | 5.4x to 8.6x | 7.6x | 5.0x |
| Proved Reserves ($/Mcfe) | $ 1.20 to $2.69 | $ 1.95 | $ 1.87 |
| First Quarter 2015 Daily Production ($/Mcfe/d) | $ 6,900 to $14,393 | $ 11,841 | $ 7,484 |
| 2015 Estimated Daily Production ($/Mcfe/d) | $ 6,502 to $14,536 | $ 11,571 | $ 7,730 |
| 2016 Estimated Daily Production ($/Mcfe/d) | $ 4,842 to $14,205 | $ 10,857 | $ 7,843 |
| *Ratio of Unit Price Over:* | | | |

89.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶88 for the same reasons already discussed *supra* ¶73 with respect to the disclosure deficiencies associated with TPH's *Selected Companies Analysis* prepared in connection with the LRE Opinion.

90.     The description of TPH's *Selected Transactions Analysis* on pages 100-101 of the Proxy is materially deficient because it fails to disclose the following multiples for each of the selected transactions observed by TPH in its analysis:

      (a)     Transaction value / proved reserves;

      (b)     Transaction value / daily production;

      (c)     Transaction value / LTM EBITDA;

      (d)     Transaction value / forward year 1 EBITDA; and

      (e)     Transaction value / forward year 2 EBITDA.

91.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

      (a)     from pages 100-101 of the Proxy:

TPH reviewed certain corporate-level transactions in the upstream energy industry with greater than 90% equity consideration announced since 2010. TPH conducted a comparable transactions analysis to assess how similar transactions were valued.

• Rosetta Resources Inc./Noble Energy, Inc. (2015)

• LRR Energy, L.P./Vanguard Natural Resources, LLC (2015)

• QR Energy, LP/Breitburn Energy Partners LP (2014)

• Kodiak Oil & Gas Corp./Whiting Petroleum Corporation (2014)

• Pioneer Southwest Energy Partners L.P./Pioneer Natural Resources Company (2013)

• Crimson Exploration Inc./Contango Oil & Gas Company (2013)

• Berry Petroleum Company/Linn Energy, LLC (2013)

• Encore Energy Partners LP/Vanguard Natural Resources, LLC (2011)

• American Oil & Gas Inc./Hess Corporation (2010)

• Arena Resources, Inc./SandRidge Energy, Inc. (2010)

For the selected transactions analysis, select transaction multiples were analyzed including:

• the transaction value (defined as the equity purchase price plus assumed net debt, preferred equity and minority interest obligations, if any) over proved reserves;

• the transaction value over daily production; and

• the transaction value over last 12 months', forward year 1 and forward year 2 EBITDA.

The observed multiple ranges from the comparable transaction analysis as compared to the resulting implied transaction multiples resulting from the proposed Eagle Rock merger consideration are summarized below:

| | Range | Median | Eagle Rock Merger Consideration |
|---|---|---|---|
| Proved Reserves ($/Mcfe) | $ 2.30 to $5.98 | $ 3.32 | $ 1.87 |
| Daily Production ($/Mcfe/d) | $ 8,779 to $29,505 | $ 20,432 | $ 7,484 |
| LTM EBITDA | 5.6x to 11.9x | 8.8x | 5.0x |
| Forward Year 1 EBITDA | 4.6x to 10.1x | 7.3x | 5.8x |
| Forward Year 2 EBITDA | 4.6x to 10.2x | 7.2x | 5.0x |

92.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶91 for the same reasons already discussed *supra* ¶76 with respect to the disclosure deficiencies associated with TPH's *Selected Transactions Analysis* prepared in connection with the LRE Opinion.

**Disclosure Deficiencies Concerning the Valuation Analysis Performed by Simmons**

93.     The Proxy also cites and annexes the opinion of LRE GP's financial advisor, Simmons.  As with the opinion of TPH, however, the Proxy fails to disclose material information about Simmons' inputs and methodology with respect to the financial valuation analyses included in such opinion with respect to the Proposed Acquisition.

94.     The description of Simmons' *Proved Net Asset Value Analysis* on page 109 of the Proxy is materially deficient because it fails to disclose:

(a)     the present values of the future cash flows calculated by Simmons for each of LRE and Vanguard, separately;

(b)     the present value of existing hedges as calculated by Simmons in its analysis; and

(c)     the individual inputs and assumptions that Simmons used for the selection of discount rates of 8% to 10% for each of LRE and Vanguard.

95.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     from page 109 of the Proxy:

Simmons performed an illustrative proved net asset value analysis for LRE and Vanguard. Simmons calculated the present value of the future cash flows that LRE and Vanguard could be expected to generate from their existing estimated proved reserves as of year-end 2014, as estimated by the management of LRE and Vanguard and contained in provided economic databases. Simmons estimated Net Asset Value by adding (i) the present value of the cash flows generated by these estimated proved reserves, plus (ii) the present value of existing hedges, less (iii) the present value of projected general & administrative expenses, less (iv) other corporate adjustments including net debt (total debt less cash) and preferred equity. All cash flows were discounted at rates of 8% and 10%. The proved net asset value analysis was performed assuming both NYMEX Strip Pricing and Bloomberg Consensus Pricing as of April 17, 2015.

The ratio of proved net asset value per unit for both LRE and Vanguard resulted in an implied exchange ratio range of 0.317x to 0.374x. These metrics were compared to the exchange ratio of 0.550x.

96.     These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶95 for the same reasons already discussed with respect to the disclosure deficiencies associated with TPH's *Net Asset Value Analysis* (*supra* at ¶64) prepared in connection with the LRE Opinion.

97.     The description of Simmons' *Comparable Company Analyses* on pages 109-110 of the Proxy is materially deficient because it fails to disclose:

(a)     the following multiples for each of the selected companies observed by Simmons in its analyses:

(i)     Unit price / 2015 projected ("P") distributable cash flow per unit;

(ii)    Unit price / 2016P distributable cash flow per unit;

(iii)   EV / 2015P EBITDA and exploration ("X");

(iv)    EV / 2016P EBITDAX; and

(v)     EV / 2014 SEC PV-10; and

(b)     whether Simmons performed any type of benchmarking analysis for LRE and/or Vanguard in relation the selected companies.

98.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From pages 109-110 of the Proxy:

Simmons examined the trading valuations of certain publicly traded partnerships in the upstream oil & gas exploration and production sector and derived a unit value range for each of LRE and Vanguard. The upstream MLP companies included in the analysis are as follows:

• Atlas Resource Partners, LP

• Breitburn Energy Partners L.P.

• EV Energy Partners, L.P.

• Legacy Reserves LP

• Linn Energy, LLC

• Mid-Con Energy Partners, LP

• Memorial Production Partners LP

For each of the companies selected, Simmons reviewed the ratio of unit price to distributable cash flow per unit ("DCFPU") and enterprise value, which was

calculated as equity value based on closing unit prices on April 17, 2015, plus book value of debt and liquidation value of preferred equity, less cash and cash equivalents, as a multiple of estimated EBITDAX in calendar years 2015 and 2016, and as a multiple of 2014 SEC PV-10. The EBITDAX projections for this analysis were derived from Wall Street consensus forecast estimates as well as LRE's and Vanguard's management forecasts adjusted for Bloomberg Consensus Commodity Prices. The 2014 SEC PV-10 estimates utilized were those included in year-end 2014 SEC filings. The following table sets forth the results of this analysis:

| | Range | Median |
|---|---|---|
| **Ratio of Unit Price To:** | | |
| 2015P DCFPU | 5.1x – 8.6x | 6.9x |
| 2016P DCFPU | 5.0x – 13.8x | 8.1x |
| **Ratio of Enterprise Value To:** | | |
| 2015P EBITDAX | 5.2x – 9.2x | 7.8x |
| 2016P EBITDAX | 6.5x – 8.9x | 7.5x |
| 2014 SEC PV-10 | 0.6x – 1.4x | 1.2x |

Following these analyses, Simmons applied certain forward-looking comparable company trading multiples to Wall Street consensus DCF per unit, and both Wall Street consensus forecast estimates and management forecasts applying Bloomberg Consensus Commodity Pricing for LRE's and Vanguard's estimated 2015 and 2016 EBITDAX, as well as to 2014 SEC PV-10 estimates utilized in LRE's and Vanguard's year-end 2014 SEC filings. A summary of this analysis is set forth below.

| | Reference Range | Implied Exchange Ratio |
|---|---|---|
| **Ratio of Equity Value To:** | | |
| 2015P DCFPU | 6.0x – 8.0x | 0.976x – 0.976x |
| 2016P DCFPU | 7.0x – 9.0x | 0.724x – 0.724x |
| **Ratio of Enterprise Value To:** | | |
| **Wall Street Consensus** | | |
| 2015P EBITDAX | 7.0x – 9.0x | 1.596x – 0.990x |
| 2016P EBITDAX | 6.5x – 8.5x | 1.430x – 0.831x |
| **Management with Consensus Pricing** | | |
| 2015P EBITDAX | 7.0x – 9.0x | 1.863x – 1.092x |
| 2016P EBITDAX | 6.5x – 8.5x | 0.542x – 0.468x |
| **2014 SEC PV-10** | 1.1x – 1.4x | 0.559x – 0.511x |

Based on the comparable company analyses above, Simmons derived a total range of implied exchange ratios of 0.468x to 1.863x, with a median of 0.903x. From this total range, Simmons used a range of 0.511x to 0.831x, which excludes results based on 2015E estimates due to the non-recurring hedge component. This range was compared to the exchange ratio of 0.550x.

99. These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶98 for the same reasons already discussed *supra* ¶73 with respect to the

disclosure deficiencies associated with TPH's *Selected Companies Analysis* prepared in connection with the LRE Opinion.

100.     The description of Simmons' *Comparable Transactions Analysis* on pages 110-111 of the Proxy is materially deficient because it fails to disclose the following multiples for each of the selected transactions observed by Simmons in its analysis:

      (a)     EV / current year EBITDA; and

      (b)     EV / future year EBITDA.

101.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

      (a)     from page 110-111 of the Proxy:

Simmons reviewed publicly available data from thirteen transactions involving U.S. listed target companies since 2010 in the upstream oil & gas sector where a significant component of the consideration consisted of stock of the acquiror. For these transactions, Simmons analyzed the transaction value at the time of the announcement as a ratio of estimated EBITDA for the current year in which the transaction was announced and the future year after the transaction was announced. EBITDA estimates were based on Wall Street analyst consensus estimates for the target companies as of the time of the transaction announcements.

| Announcement Date | Target | Acquiror |
|---|---|---|
| 7/24/2014 | QR Energy, LP | Breitburn Energy Partners L.P. |
| 7/13/2014 | Kodiak Oil & Gas Corp. | Whiting Petroleum Corporation |
| 3/12/2014 | EPL Oil & Gas, Inc. | Energy XXI Ltd. |
| 4/30/2013 | Crimson Exploration Inc. | Contango Oil & Gas Co. |
| 5/7/2013 | Pioneer Southwest Energy Partners L.P. | Pioneer Natural Resources USA, Inc. |
| 2/21/2013 | Berry Petroleum Co. | Linn Energy, LLC/LinnCo |
| 12/5/2012 | Plains Exploration & Production Company | Freeport-McMoRan Inc. |
| 4/25/2012 | GeoResources Inc. | Halcon Resources Corp. |
| 3/25/2011 | Encore Energy Partners LP | Vanguard Natural Resources LLC |
| 1/19/2011 | Nuloch Resources, Inc. | Magnum Hunter Resources Corporation |
| 7/27/2010 | American Oil & Gas Inc. | Hess Corporation |
| 4/15/2010 | Mariner Energy, Inc. | Apache Corp. |
| 4/4/2010 | Arena Resources Inc. | Sandridge Energy, Inc. |

Based on the transactions listed above, Simmons derived a transaction value to EBITDA ratio range of 4.8x to 10.1x with a median value of 7.5x for the current

year EBITDA estimates, and 4.4x to 8.5x with a median value of 5.7x for the future year EBITDA estimates. Simmons applied a selected range of EBITDA multiples to LRE's EBITDA for the years 2015 and 2016 using projections derived from LRE's management forecasts and adjusted for NYMEX Strip Prices, and to LRE's 2015 and 2016 EBITDA estimates using Wall Street consensus estimates. Simmons then made adjustments for LRE's net debt and units outstanding to derive an implied equity value per unit:

| | Reference Range | Implied LRE Equity Value Per Unit |
|---|---|---|
| **Ratio of Enterprise Value To:** | | |
| **Management with NYMEX Pricing** | | |
| 2015P EBITDA | 6.0x – 9.0x | $  6.94 – $15.52 |
| 2016P EBITDA | 5.0x – 7.0x | N/A – $3.96 |
| **Wall Street Consensus** | | |
| 2015P EBITDA | 6.0x – 9.0x | $  6.22 – $14.44 |
| 2016P EBITDA | 5.0x – 7.0x | $  2.59 – $7.71 |

Simmons divided the implied LRE equity values per unit calculated above by Vanguard's closing price on April 17, 2015 of $15.72 per unit to derive a range of implied exchange ratios of 0.165x to 0.987x, with a median of 0.441x. From this total range, Simmons used a range of 0.252x to 0.491x, which excludes results based on 2015E estimates due to the non-recurring hedge component. This range was compared to the exchange ratio of 0.550x.

102.    These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶101 for the same reasons already discussed *supra* ¶76 with respect to the disclosure deficiencies associated with TPH's *Selected Transactions Analysis* prepared in connection with the LRE Opinion.

**Disclosure Deficiencies Concerning the Eagle Rock Opinion Rendered by Simmons**

103.    The description of Simmons' *Proved [Net Asset Value] Analysis* on page 119 of the Proxy is materially deficient because it fails to disclose:

(a)    the present values of the future cash flows calculated by Simmons for each of Eagle Rock and New Vanguard, separately;

(b)    the present value of existing hedges and projected general and administrative expenses as calculated by Simmons in its analysis; and

(c)      the individual inputs and assumptions that Simmons used for the selection

of discount rates of 8% to 10% for each of Eagle Rock and New Vanguard.

104.    The omission of this information renders the following statements in the Proxy

false and/or materially misleading in contravention of the Exchange Act:

(a)      from page 119 of the Proxy:

Simmons performed an illustrative Proved Net Asset Value analysis for Eagle
Rock and Pro Forma Vanguard. Simmons calculated the present value of the
future cash flows that Eagle Rock and Pro Forma Vanguard could be expected to
generate from their existing estimated proved reserves as of March 31, 2015, as
estimated by the management of LRE, Vanguard and Eagle Rock and contained
in provided economic databases. Simmons estimated Net Asset Value by adding
(i) the present value of the cash flows generated by these estimated proved
reserves, plus (ii) the present value of existing hedges, less (iii) the present value
of projected general & administrative expenses, less (v) other corporate
adjustments including net debt (total debt less cash) and preferred equity. All cash
flows were discounted at rates of 8% and 10%. The Proved Net Asset Value
Analysis was performed assuming both NYMEX Strip Pricing and Bloomberg
Consensus Pricing as of May 18, 2015.

The ratio of proved net asset value per unit for both Eagle Rock and Pro Forma
Vanguard resulted in an Eagle Rock implied exchange ratio range of 0.214x to
0.474x. These metrics were compared to the Eagle Rock exchange ratio of
0.185x.

105.    These statements in the Proxy are rendered false and/or misleading by the

omissions identified in ¶104 for the same reasons already discussed *supra* ¶64 with respect to the

disclosure deficiencies associated with TPH's *Net Asset Value Analysis* prepared in connection

with the LRE Opinion.

106.    The description of Simmons' *Comparable Company Analyses* on pages 119-120

of the Proxy is materially deficient because it fails to disclose:

(a)      the following multiples for each of the selected companies observed by

Simmons in its analyses:

(i)      Unit price / 2015P distributable cash flow per unit;

(ii)     Unit price / 2016P distributable cash flow per unit;

       (iii)     EV / 2015P EBITDAX;

       (iv)     EV / 2016P EBITDAX; and

       (v)     EV / 2014 SEC PV-10; and

    (b)     whether Simmons performed any type of benchmarking analysis for LRE and/or Vanguard in relation the selected companies.

107.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

    (a)     from pages 119-120 of the Proxy:

Simmons examined the trading valuations of certain publicly traded partnerships in the upstream oil & gas exploration and production sector and derived a unit value range for each of Eagle Rock and Pro Forma Vanguard. The upstream MLP companies included in the analysis are as follows:

• Atlas Resource Partners, LP

• Breitburn Energy Partners L.P.

• EV Energy Partners, L.P.

• Legacy Reserves LP

• Linn Energy, LLC

• Mid-Con Energy Partners, LP

• Memorial Production Partners LP

For each of the companies selected, Simmons reviewed the ratio of unit price to distributable cash flow per unit ("DCFPU") and enterprise value, which was calculated as equity value based on closing unit prices on May 19, 2015, plus book value of debt and liquidation value of preferred equity, less cash and cash equivalents, as a multiple of estimated EBITDA in calendar years 2015 and 2016, and as a multiple of 2014 SEC PV-10. The EBITDA projections for this analysis were derived from Wall Street consensus forecast estimates as well as LRE's, Vanguard's and Eagle Rock's management forecasts adjusted for Bloomberg Consensus Commodity Prices. The 2014 SEC PV-10 estimates utilized were those included in year-end 2014 SEC filings. The following table sets forth the results of this analysis:

| | Range | Median |
|---|---|---|
| **Ratio of Unit Price To:** | | |
| 2015P DCFPU | 5.3x – 8.6x | 6.5x |
| 2016P DCFPU | 5.5x – 9.1x | 7.1x |
| **Ratio of Enterprise Value To:** | | |
| 2015P EBITDA | 7.8x – 8.9x | 7.9x |
| 2016P EBITDA | 7.5x – 8.7x | 8.2x |
| 2014 SEC PV-10 | 0.6x – 1.6x | 1.1x |

Following these analyses, Simmons applied certain forward-looking comparable company trading multiples to Wall Street consensus DCF per unit, and both Wall Street consensus forecast estimates and management forecasts applying Bloomberg Consensus Commodity Pricing for Eagle Rock's and Pro Forma Vanguard's estimated 2015 and 2016 EBITDA, as well as to 2014 SEC PV-10 estimates utilized in Eagle Rock's and Pro Forma Vanguard's year-end 2014 SEC filings. A summary of this analysis is set forth below.

| | Reference Range | Implied Exchange Ratio |
|---|---|---|
| **Ratio of Equity Value To:** | | |
| 2015P DCFPU | 5.5x – 7.5x | 0.165x – 0.165x |
| 2016P DCFPU | 6.0x – 8.0x | 0.169x – 0.169x |
| **Ratio of Enterprise Value To:** | | |
| **Wall Street Consensus** | | |
| 2015P EBITDA | 7.0x – 9.0x | 0.552x – 0.322x |
| 2016P EBITDA | 7.0x – 9.0x | 0.593x – 0.349x |
| **Management with Consensus Pricing** | | |
| 2015P EBITDA | 7.0x – 9.0x | 0.539x – 0.313x |
| 2016P EBITDA | 7.0x – 9.0x | 0.449x – 0.272x |
| **2014 SEC PV-10** | 1.0x – 1.3x | 0.347x – 0.223x |

Based on the comparable company analyses above, Simmons derived a total range of Eagle Rock implied exchange ratios of 0.165x to 0.593x, with a median of 0.317x. From this total range, Simmons used a range of 0.223x to 0.449x, which excludes results based on 2015E estimates due to the non-recurring hedge component. This range was compared to the Eagle Rock exchange ratio of 0.185x.

108.   These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶107 for the same reasons already discussed *supra* ¶73 with respect to the disclosure deficiencies associated with TPH's *Selected Companies Analysis* prepared in connection with the LRE Opinion.

109.   The description of Simmons' *Comparable Transactions Analysis* on pages 121-122 of the Proxy is materially deficient because it fails to disclose he following multiples for each of the selected transactions observed by Simmons in its analysis:

      (a)      EV / current year EBITDA; and

      (b)      EV / future year EBITDA.

110.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

      (a)      From pages 121-122 of the Proxy:

Simmons reviewed publicly available data from fifteen transactions involving U.S. listed target companies since 2010 in the upstream oil & gas sector where a significant component of the consideration consisted of stock of the acquiror. For these transactions, Simmons analyzed the transaction value at the time of the announcement as a ratio of estimated EBITDA for the current year in which the transaction was announced and the future year after the transaction was announced. EBITDA estimates were based on Wall Street analyst consensus estimates for the target companies as of the time of the transaction announcements.

| Announcement Date | Target | Acquiror |
| --- | --- | --- |
| 5/11/2015 | Rosetta Resources, Inc. | Noble Energy, Inc. |
| 4/20/2015 | LRR Energy, L.P. | Vanguard Natural Resources, LLC |
| 7/24/2014 | QR Energy, LP | Breitburn Energy Partners L.P. |
| 7/13/2014 | Kodiak Oil & Gas Corp. | Whiting Petroleum Corporation |
| 3/12/2014 | EPL Oil & Gas, Inc. | Energy XXI Ltd. |
| 4/30/2013 | Crimson Exploration Inc. | Contango Oil & Gas Co. |
| 5/7/2013 | Pioneer Southwest Energy Partners L.P. | Pioneer Natural Resources USA, Inc. |
| 2/21/2013 | Berry Petroleum Co. | Linn Energy, LLC/LinnCo |
| 12/5/2012 | Plains Exploration & Production Company | Freeport-McMoRan Inc. |
| 4/25/2012 | GeoResources Inc. | Halcon Resources Corp. |
| 3/25/2011 | Encore Energy Partners LP | Vanguard Natural Resources LLC |
| 1/19/2011 | Nuloch Resources, Inc. | Magnum Hunter Resources Corporation |
| 7/27/2010 | American Oil & Gas Inc. | Hess Corporation |
| 4/15/2010 | Mariner Energy, Inc. | Apache Corp. |
| 4/4/2010 | Arena Resources Inc. | Sandridge Energy, Inc. |

Based on the transactions listed above, Simmons derived a transaction value to EBITDA ratio range of 4.8x to 10.1x with a median value 7.5x for the current year EBITDA estimates, and 4.4x to 9.3x with a median value of 6.0x for the future year EBITDA estimates. Simmons applied a selected range of EBITDA multiples to Eagle Rock's EBITDA for the years 2015 and 2016 using projections derived from Eagle Rock's management forecasts and adjusted for NYMEX Strip Prices, and to Eagle Rock's 2015 and 2016 EBITDA estimates using Wall Street consensus estimates. Simmons then made adjustments for Eagle Rock's net debt and units outstanding to derive an implied equity value per unit:

| | Reference Range | Implied Eagle Rock Equity Value Per Unit |
|---|---|---|
| **Ratio of Enterprise Value To:** | | |
| **Management with NYMEX Pricing** | | |
| 2015P EBITDA | 6.0x – 9.0x | $2.98 – $4.93 |
| 2016P EBITDA | 5.0x – 7.0x | $2.01 – $3.18 |
| **Wall Street Consensus** | | |
| 2015P EBITDA | 6.0x – 9.0x | $3.12 – $5.14 |
| 2016P EBITDA | 5.0x – 7.0x | $2.73 – $4.18 |

Simmons divided the implied Eagle Rock equity values per unit calculated above by Vanguard's closing price on May 19, 2015 of $15.79 per unit to derive a range of Eagle Rock implied exchange ratios of 0.127x to 0.325x, with a median of 0.200x. From this total range, Simmons used a range of 0.127x to 0.265x, which excludes results based on 2015E estimates due to the nonrecurring hedge component. This range was compared to the Eagle Rock exchange ratio of 0.185x.

111.    These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶110 for the same reasons already discussed *supra* ¶76 with respect to the disclosure deficiencies associated with TPH's *Selected Transactions Analysis* prepared in connection with the LRE Opinion.

**Disclosure Deficiencies Concerning the Anticipated Future Performance of LRE Energy, Vanguard, New Vanguard, and Eagle Rock**

112.    According to the Proxy, TPH and Simmons were provided with, and relied significantly upon, certain financial forecasts prepared by management for LRR Energy, Vanguard, New Vanguard, and Eagle Rock for fiscal years 2015-2019, respectively, in preparing its financial valuation analyses.  The Proxy does not, however, disclose certain aspects of these various sets of projections that are material to Company unitholders' decision whether to approve the Proposed Acquisition, including:

(a)      the financial projections provided by LRE management and relied upon by TPH and Simmons for purposes of their analyses, for years 2015-2019, for each of the LRE Base Capital Case and the Reduced Capital Case, for the following items:

   (i)  Average daily production (one thousand cubic feet of natural gas estimated per day "Mcfe/d")) (Reduced Capital Case for 2017-2019);

   (ii)  Total revenue (Reduced Capital Case for 2017-2019);

   (iii)  EBITDA (Reduced Capital Case for 2017-2019);

   (iv)  EBIT (or D&A);

   (v)  Changes in net working capital;

   (vi)  Growth capital expenditures;

   (vii)  Maintenance capital expenditures;

   (viii)  Unit-based compensation expense;

   (ix)  Net income;

   (x)  Unlevered free cash flow;

   (xi)  Distributable cash flow;

   (xii)  Distributed cash flow; and

   (xiii)  Distribution per unit;

  (b)  the financial projections provided by Vanguard management and relied upon by TPH and Simmons for purposes of their analyses, for years 2015-2019, for each of Vanguard and New Vanguard, for the following items:

   (i)  EBIT (or D&A);

   (ii)  Changes in net working capital;

   (iii)  Growth capital expenditures;

   (iv)  Maintenance capital expenditures;

   (v)  Unit-based compensation expense;

   (vi)  Net income;

   (vii)  Unlevered free cash flow;

(viii)    Distributed cash flow; and

(ix)    Distribution per unit; and

(c)    the financial projections provided by Eagle Rock management and relied upon by TPH and Simmons for purposes of their analyses, for years 2015-2019, for Eagle Rock, for the following items:

(i)    EBIT (or D&A);

(ii)    Changes in net working capital;

(iii)    Growth capital expenditures;

(iv)    Maintenance capital expenditures;

(v)    Unit-based compensation expense;

(vi)    Net income;

(vii)    Unlevered free cash flow;

(viii)    Distributed cash flow; and

(ix)    Distribution per unit.

113.    The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)    from pages 126-130 of the Proxy:

None of Vanguard, LRE or Eagle Rock as a matter of course makes public long-term projections as to its future revenues, production, earnings or other results due to, among other reasons, the uncertainty of the underlying assumptions and estimates. However, LRE is including the following summaries of the unaudited prospective financial and operating information solely because such information was made available to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their respective evaluations of the merger and the Eagle Rock merger, and each of TPH and Simmons were authorized by LRE to rely upon such information for purposes of its analyses and opinions. The inclusion of this information should not be regarded as an indication that any of the board of directors of LRE GP, the LRE GP conflicts committee, TPH, Simmons or any other recipient of this information considered, or now considers, it to be necessarily predictive of actual future results.

The unaudited prospective financial and operating information prepared by the respective managements of LRE, Vanguard and Eagle Rock was, in general, prepared solely for LRE's, Vanguard's and Eagle Rock's internal use and is subjective in many respects. As a result, there can be no assurance that the prospective results will be realized or that actual results will not be significantly higher or lower than estimated. Since the unaudited prospective financial and operating information covers multiple years, such information by its nature becomes less predictive with each successive year. LRE unitholders are urged to review LRE's, Vanguard's and Eagle Rock's SEC filings for a description of risk factors with respect to LRE's, Vanguard's and Eagle Rock's business, respectively, as well as the section of this proxy statement/prospectus entitled "Risk Factors." See also "Cautionary Statement Regarding Forward-Looking Statements" and "Where You Can Find More Information." The unaudited prospective financial and operating information was not prepared with a view toward public disclosure, nor was it prepared with a view toward compliance with GAAP, published guidelines of the SEC or the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial and operating information. In addition, the unaudited prospective financial and operating information requires significant estimates and assumptions that make it inherently less comparable to the similarly titled GAAP measures in the historical GAAP financial statements of LRE, Vanguard or Eagle Rock. The prospective financial information of LRE included in this proxy statement/prospectus has been prepared by, and is the responsibility of, LRE's management, and the prospective financial information of Vanguard included in this proxy statement/prospectus has been prepared by, and is the responsibility of, Vanguard's management. The prospective financial information of New Vanguard (as defined below), has been prepared by, and is the responsibility of, Vanguard management and the prospective financial information of Eagle Rock included in this proxy statement/prospectus has been prepared by, and is the responsibility of, Eagle Rock's management. None of Vanguard's independent registered public accounting firm, LRE's independent registered public accounting firm, Eagle Rock's independent registered public accounting firm, or any other independent accountants has compiled, examined or performed any procedures with respect to the unaudited prospective financial and operating information contained herein; accordingly they have not expressed any opinion or any other form of assurance on such information. The report of the independent registered public accounting firm of LRE in its Annual Report on Form 10-K for the year ended December 31, 2014 relates to LRE's historical financial information. The report of the independent registered public accounting firm of Vanguard in its Annual Report on Form 10-K for the year ended December 31, 2014 relates to Vanguard's historical financial information. The report of the independent registered public accounting firm of Eagle Rock in its Annual Report on Form 10-K for the year ended December 31, 2014 relates to Eagle Rock's historical financial information. None of these reports extends to the unaudited prospective financial and operating information presented below and should not be read to do so. Furthermore, the following unaudited prospective financial and operating information does not take into account any circumstances or events occurring after the date such information was prepared.

The following tables reflect the material unaudited prospective financial and operating data regarding LRE's operations provided to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their evaluations of the merger. The data reflects certain oil and gas pricing assumptions of LRE. The Base Capital and Reduced Capital Cases were based on LRE's internal estimates of reserves, production, costs and capital expenditures. The Reduced Capital Case had less capital expenditures in 2016 compared to the Base Capital Case due to the assumption of capital constraints in the Reduced Capital Case.

**Base Capital Case**

|  | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Average daily production (Mcfe/d) | 39,461 | 38,519 | 38,687 | 37,998 | 38,024 |
| Total revenue ($in millions) | 124 | 104 | 101 | 97 | 88 |
| EBITDA ($in millions) | 80 | 60 | 56 | 52 | 42 |
| Total Capital Expenditures ($in millions) | 21 | 35 | 26 | 27 | 20 |
| Key Assumption |  |  |  |  |  |
| Oil Price ($/Bbl) | 55.69 | 62.13 | 63.90 | 64.83 | 65.49 |
| Gas Price ($/Mcf) | 2.82 | 3.11 | 3.36 | 3.48 | 3.58 |

**Reduced Capital Case**

|  | 2015 | 2016 |
|---|---|---|
| Average daily production (Mcfe/d) | 39,470 | 36,208 |
| Total revenue ($in millions) | 124 | 100 |
| EBITDA ($in millions) | 80 | 57 |
| Total Capital Expenditures ($in millions) | 21 | 22 |
| Key Assumption |  |  |
| Oil Price ($/Bbl) | 55.69 | 62.13 |
| Gas Price ($/Mcf) | 2.82 | 3.11 |

For purposes of the tables set forth above, EBITDA, which LRE refers to as Adjusted EBITDA, is defined as net income from which LRE adds or subtracts the following:

• income tax expense;

• interest expense-net, including loss (gain) on interest rate derivative instruments, net;

• depletion and depreciation;

• accretion of asset retirement obligations;

• amortization of equity awards;

• loss (gain) on settlement of asset retirement obligations;

• loss (gain) on commodity derivative instruments, net;

• commodity derivative instrument net cash settlements;

• impairment of oil and natural gas properties; and

• other non-recurring items that LRE deems appropriate.

The following table reflects the material unaudited prospective financial and operating data regarding Vanguard's operations provided to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their evaluations of the merger. The data reflects certain oil and gas pricing assumptions of Vanguard.

| | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Average daily production (Mcfe/d) | 380,258 | 375,965 | 374,959 | 376,178 | 378,828 |
| Total revenue ($in millions) | 564 | 573 | 550 | 540 | 556 |
| EBITDA ($in millions) | 373 | 372 | 326 | 309 | 319 |
| Distributable cash flow ($in millions) | 147 | 136 | 83 | 60 | 65 |
| Key Assumption | | | | | |
| Oil Price ($/Bbl) | 55.69 | 62.13 | 63.90 | 64.83 | 65.49 |
| Gas Price ($/Mcf) | 2.82 | 3.11 | 3.36 | 3.48 | 3.58 |

The following table reflects the material unaudited prospective financial and operating data regarding the operations of New Vanguard, provided to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their evaluations of the Eagle Rock merger. The data reflects certain oil and gas pricing assumptions of Vanguard.

| | August 1 to December 31, 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Average daily production (Mcfe/d) | 416,135 | 407,372 | 402,841 | 400,024 | 401,617 |
| Total revenue ($in millions) | 278 | 670 | 631 | 594 | 610 |
| EBITDA ($in millions) | 197 | 437 | 379 | 341 | 351 |
| Distributable cash flow ($in millions) | 101 | 184 | 120 | 75 | 81 |
| Key Assumption | | | | | |
| Oil Price ($/Bbl) | 60.01 | 62.32 | 64.37 | 66.02 | 67.25 |
| Gas Price ($/Mcf) | 3.05 | 3.24 | 3.36 | 3.46 | 3.55 |

For purposes of the tables set forth above, EBITDA, which Vanguard refers to as Adjusted EBITDA, is defined as net income (loss) plus the following adjustments:

• net interest expense;

• depreciation, depletion, amortization and accretion;

• impairment of oil and natural gas properties;

• net gains or losses on commodity derivative contracts;

• cash settlements on matured commodity derivative contracts;

• net gains or losses on interest rate derivative contracts;

• gain on acquisition of oil and natural gas properties;

• Texas margin taxes; and

• compensation related items, which include unit-based compensation expense and unrealized fair value of phantom units granted to Vanguard's officers.

The following table reflects the material unaudited prospective financial and operating data regarding Eagle Rock's operations provided to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their evaluations of the Eagle Rock merger. The data reflects certain oil and gas pricing assumptions of Vanguard.

| | August 1 to December 31, 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Average daily production (Mcfe/d) | 78,915 | 82,280 | 102,703 | 99,990 | 107,942 |
| Total revenue ($in millions) | 74 | 172 | 187 | 188 | 212 |
| EBITDA ($in millions) | 40 | 89 | 101 | 100 | 122 |
| Distributable cash flow ($in millions) | 18 | 35 | 41 | 44 | 64 |
| Key Assumption | | | | | |
| Oil Price ($/Bbl) | 60.01 | 62.32 | 64.37 | 66.02 | 67.25 |
| Gas Price ($/Mcf) | 3.05 | 3.24 | 3.36 | 3.46 | 3.55 |

For purposes of the table set forth above, EBITDA, which Eagle Rock refers to as Adjusted EBITDA, is defined as net income from which Eagle Rock adds or subtracts:

• income tax provision (benefit);

• interest-net, including gains and losses from interest rate risk management instruments that settled during the period and other expense;

• depreciation, depletion and amortization expense;

• impairment expense;

• other operating expense, non-recurring;

• other non-cash operating and general and administrative expenses, including non-cash compensation related to Eagle Rock's equity-based compensation program;

• mark-to-market (gains) losses on commodity and interest rate risk management related instruments; and

• gains (losses) on discontinued operations and other (income) expense.

114.    These statements in the Proxy are rendered false and/or misleading by the omissions identified in ¶113 as this information is integral the unitholders' evaluation of the consideration being offered in the Proposed Acquisition.  Indeed, these financial projections provide a sneak peek into LRR Energy's expected future performance (i.e., growth/profitability)

and, consequently, its value as a standalone entity.   More importantly, however, this expected performance is more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management who have their fingers on the pulse of the Company.   Accordingly, it is no surprise that financial projections are among the most highly sought after disclosures by unitholders in the context of corporate transactions such as this.

**Disclosure Deficiencies Concerning Potential Conflicts of Interest in Connection with TPH's Fairness Opinion**

115.   Finally, the Proxy fails to disclose the following information concerning the potential conflicts of interest impacting the independent and disinterested nature of TPH's fairness opinion:

(a)   the specific services TPH provided to LRE, Vanguard, or Eagle Rock, or any of their affiliates, in the two years preceding the announcement of the Proposed Acquisition and the amount received for services rendered; and

(b)   the amount of compensation TPH received for services rendered to LRR Energy, Vanguard, or Eagle Rock for the services rendered in the two years preceding the announcement of the Proposed Acquisition.

116.   Without this omitted material information, LRR Energy unitholders are unable to determine whether (and to what extent) TPH may have been motivated to steer the sales process in favor of Vanguard at the expense of other potentially more value maximizing transactions for its own gain (or steered the Company in favor of a transaction generally).   Specifically, unitholders are entitled to receive all material information that would tend to show TPH may have favored Vanguard over other potential acquirers that may have been willing to pay more for the Company.   The nature and scope of the prior relationship between TPH and LRR Energy is equally material in that it may have provided unitholders with additional information concerning

the impact that TPH's potential conflicts may have had on the overall sales process and its resulting fairness opinion.

117.   Defendants' failure to provide LRR Energy unitholders with the foregoing material information constitutes a violation of sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the unitholder vote on the Proposed Acquisition, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Acquisition and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

118.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119.   During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

120.   By virtue of their positions within LRR Energy, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the

Company's and Vanguard's assets.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

121.    The omissions and false and misleading statements in the Proxy are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to unitholders.

122.    By reason of the foregoing, the defendants have violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

123.    Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    The Individual Defendants acted as controlling persons of LRR Energy within the meaning of section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of LRR Energy and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

126. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

127. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of LRR Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition. They were, thus, directly involved in the making of the document.

128. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Acquisition. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

129. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

130. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, LRR Energy's unitholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until they comply with their obligations under sections 14(a) and 20(a) of the Exchange Act to provide unitholders with all material information about the unfair sales process for the Company, the conflicts of interest suffered by defendants in connection with the Proposed Acquisition, the inadequate consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company and Vanguard;

C.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

Dated: August 18, 2015                          **COOCH AND TAYLOR, P.A.**

                                                                */s/ Blake A. Bennett*
                                                                Blake A. Bennett (#5133)
                                                                The Brandywine Building
                                                                1000 West Street, 10th Floor
                                                                Wilmington, DE 19801
                                                                Telephone: (302) 984-3800
                                                                Facsimile: (302) 984-3939
                                                                bbennett@coochtaylor.com
                                                                *Attorneys for Plaintiff*

**OF COUNSEL**

**ROBBINS ARROYO LLP**
Brian J. Robbins
Felipe J. Arroyo
Jenny L. Dixon
600 B Street, Suite 1900
San Diego, CA  92101
Telephone: (619) 525-3900
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
farroyo@robbinsarroyo.com
jdixon@robbinsarroyo.com

**VITA LAW OFFICES P.C.**
Richard J. Vita
100 State Street, 9th Floor
Boston, MA 02109
Telephone: (617) 426-6566
Facsimile: (617) 249-2119
rjv@vitalaw.com