**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT HURWITZ, on Behalf of Himself and All Others Similarly Situated, | ) ) | Case No.: 1:15-cv-00711-SLR |
| | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LRR ENERGY, L.P., ERIC MULLINS, CHARLES W. ADCOCK, JONATHAN C. FARBER, TOWNES G. PRESSLER, JR., JOHN A. BAILEY, JONATHAN P. CARROLL, VANGUARD NATURAL RESOURCES, LLC, LIGHTHOUSE MERGER SUB, LLC, SCOTT W. SMITH, RICHARD A. ROBERT, W. RICHARD ANDERSON, BRUCE V. MCCULLOUGH, and LOREN SINGLETARY, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | |
| Defendants. | ) ) | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Robert Hurwitz ("Plaintiff"), by his undersigned attorneys, individually and on behalf of all others similarly situated, respectfully brings this class action for violations of sections 11 and 15 of the Securities Act of 1933 (the "1933 Act"), and sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder pursuant to section 27 of the 1934 Act, against the herein named defendants.   Plaintiff alleges the following based upon the investigation of Plaintiff's counsel, which included a review of SEC filings by LRR Energy, L.P. ("LRR Energy" or the "Company") and Vanguard Natural Resources, LLC ("Vanguard"), as well as securities analysts' reports and advisories about LRR Energy and Vanguard, press releases, media reports, and other public statements issued by LRR Energy and Vanguard. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

00239024

- 1 -

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff on behalf of former holders of LRR Energy units in connection with the unit-for-unit acquisition of LRR Energy by Vanguard.  This action is brought against:  LRR Energy, and the members of LRR Energy's Board of Directors (the "Board").  These defendants collectively are referred to as the "LRR Energy Defendants." This action is also brought against Vanguard and certain of its officers and directors.  These defendants collectively are referred to as the "Vanguard Defendants."

2.      Plaintiff's claims arise out of defendants' dissemination of false and misleading statements and omissions, in violation of sections 11 and 15 of the 1933 Act, sections 14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9, in a Form S-4 Registration Statement under the 1933 Act and amendments thereto (collectively, the "Registration Statement"), issued by the Vanguard Defendants, and in a Proxy Statement pursuant to section 14(a) of the 1934 Act jointly issued by the Vanguard Defendants and the LRR Energy Defendants (the "Proxy").

3.      Headquartered in Houston, Texas, LRR Energy was a Delaware limited partnership formed in April 2011 to operate, acquire, and develop oil and natural gas properties in North America with long-lived, predictable production profiles.  Although oil and gas prices had recently declined, LRR Energy continued to deliver impressive financial results—due partly to its superior portfolio of oil and various natural gas hedge positions at above market prices —and the Company was well-positioned to capitalize on the next upswing in commodity prices.[1] Further, LRR Energy's conservative approach to debt financing allowed the Company to

---

[1] *See* LRR Energy, L.P., Annual Report (Form 10-K), at 68-69 (Mar. 4, 2015) (for the period ending December 31, 2014).

continue to offer its investors increasing cash distributions despite the unfavorable market environment.

4.     Nevertheless, on April 20, 2015, LRR Energy announced that it had entered into a Purchase Agreement and Plan of Merger (the "Merger Agreement") pursuant to which a subsidiary of Vanguard will merge into LRR Energy, and, at the same time, Vanguard will acquire LRE GP, LLC ("LRE GP"), the general partner of LRR Energy (collectively with LRE GP, "LRR Energy") (the "Acquisition").[2]   Under the terms of the Merger Agreement, Vanguard agreed to acquire all of LRR Energy's outstanding common units in a unit-for-unit transaction with an exchange ratio of 0.55 Vanguard common units per LRR Energy common unit.[3]   In September of 2015, defendants issued the materially false and misleading Registration Statement and Proxy in connection with their efforts to secure unitholder approval of the Acquisition.   On October 5, 2015, LRR Energy held a special meeting where its unitholders approved the Acquisition.

5.     In order to secure necessary support for the Acquisition, the defendants created the false impression that the Acquisition, and the Vanguard units to be received by LRR Energy's unitholders, were an attractive investment.   They did so in part by showcasing Vanguard's historical cash distributions and by making further representations about Vanguard's purported ability to offer superior cash distributions to the unitholders of the combined company.   For example, the Registration Statement and Proxy both stated that LRR Energy unitholders should

---

[2] On May 21, 2015, Vanguard announced that it was also acquiring Eagle Rock Energy Partners, L.P. ("Eagle Rock").  Under the terms of the deal, Vanguard agreed to purchase Eagle Rock for $474 million and assume all of Eagle Rock's outstanding net debt of $140 million.  Vanguard closed the Eagle Rock transaction in October of 2015.

[3] Vanguard also acquired all of the limited liability company interests in LRE GP in exchange for an additional 12,320 Vanguard common units.

approve the Acquisition because "**Vanguard believes [LRR Energy's] assets will provide consistent and predictable cash flow volumes that will enable Vanguard to continue to make consistent monthly cash distributions to its unitholders and, over time, improve equity valuation.**"  Additionally, the Registration Statement and Proxy annexed the fairness opinions of the Board's financial advisors,[4] both of which concluded that the Acquisition was "fair" from a financial point of view based, at least in part, on analyses of LRR Energy's and Vanguard's "distributable cash flow[s]."

6.     However, at the very same time these representations were made to LRR Energy's unitholders, Vanguard was in the midst of an imminent and undisclosed debt covenant crisis. Indeed, the LRR Energy Defendants and the Vanguard Defendants failed to disclose that Vanguard was unable to satisfy the terms of its existing debt covenants based on the "**then-current**" financial information outlined in the Registration Statement and Proxy.  Further, the Registration Statement and Proxy also failed to acknowledge the impact that Vanguard's impending debt crisis, combined with the requirements of its limited liability company agreement, would have on the company's ability to deliver the cash distributions that were touted to LRR Energy's unitholders in the lead up to the Acquisition.

7.     Unfortunately, LRR Energy's former unitholders were quickly forced to confront the unfortunate reality of these omissions.  Just weeks after the close of the Acquisition, Vanguard announced that it was forced to slash its cash distributions to unitholders from $1.41 to $0.36 per common unit (a 75% reduction) as a result of the company's debt crisis.  Two months later, on March 4, 2016, Vanguard announced that the company was suspending cash

---

[4] The Board retained Tudor, Pickering, Holt & Co. Advisors, LLC, to serve as its financial advisor, while the conflicts committee of the Board retained Simmons & Company International to serve as its independent financial advisor in connection with the Acquisition.

distributions altogether.   In the same press release, defendant Scott W. Smith, Vanguard's President and Chief Executive Officer ("CEO"), admitted that these measures were the result of efforts to reduce "our debt in 2016" and offered no indication when the company would resume its cash distributions to unitholders.

8.     These revelations about the true nature of Vanguard's debt crisis, and the company's corresponding inability to offer any cash distributions to unitholders, have caused the value of Vanguard's common units to collapse.   At the time the Acquisition was announced, the consideration to be received by LRR Energy unitholders was valued at $8.93, based on Vanguard's closing price on April 20, 2015.   Since then, however, the value of Vanguard's common units has plummeted by as much as 91.7%, rendering the consideration received by LRR Energy's former unitholders through the Acquisition worth little more than $0.74 per unit.

9.     As explained further herein, the omitted information related to Vanguard's debt crisis and the company's inability to pay cash distributions was material to LRR Energy's unitholders in voting on the Acquisition and accepting 0.55 Vanguard common units in exchange for each of their valuable LRR Energy units.   As such, defendants' violations of the 1933 Act and the 1934 Act, and SEC Rule 14a-9, have damaged Plaintiff and the class.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to section 22 of the 1933 Act for violations of sections 11 and 15 of the 1933 Act, and pursuant to section 27 of the 1934 Act for violations of sections 14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9.

11.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual

who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because LRR Energy's headquarters was located at Heritage Plaza, 1111 Bagby Street, Suite 4600, Houston, Texas.  Moreover, defendants' wrongful acts occurred in part in this District and the LRR Energy and Vanguard Individual Defendants (defined herein) reside and/or conduct business in this District.

## THE PARTIES

13.     Plaintiff was, at all relevant times until the close of the Acquisition, a unitholder of LRR Energy, and received Vanguard units in exchange for his units of LRR Energy through the Acquisition.

14.     Defendant LRR Energy was a Delaware corporation with principal executive offices located at Heritage Plaza, 1111 Bagby Street, Suite 4600, Houston, Texas.

15.     Defendant Eric Mullins ("Mullins") was LRR Energy's Co-Chief Executive Officer, Chairman of the Board, and a director since May 2011.

16.     Defendant Charles W. Adcock was LRR Energy's Co-Chief Executive Officer and a director since May 2011.

17.     Defendant Jonathan C. Farber was an LRR Energy director and had been since May 2011.

18.     Defendant Townes G. Pressler, Jr. was an LRR Energy director and had been since May 2011.

19.     Defendant John A. Bailey was an LRR Energy director and had been since

November 2011.

20.     Defendant Jonathan P. Carroll was an LRR Energy director and had been since January 2014.

21.     Defendant Vanguard is a Delaware limited liability company with principal executive offices located at 5847 San Felipe, Suite 3000, Houston, Texas.  Defendant Vanguard issued the false and misleading Registration Statement and the false and misleading Proxy.

22.     Defendant Scott W. Smith ("S. Smith") is the President, CEO, and a Director of Vanguard.  Defendant S. Smith signed the false and misleading Registration Statement.

23.     Defendant Richard A. Robert ("Robert") is the Executive Vice President, Chief Financial Officer, and a Director of Vanguard.   Defendant Robert signed the false and misleading Registration Statement.

24.     Defendant W. Richard Anderson ("Anderson") is a Director of Vanguard.  Defendant Anderson signed the false and misleading Registration Statement.

25.     Defendant Bruce W. McCullough ("McCullough") is a Director of Vanguard.  Defendant McCullough signed the false and misleading Registration Statement.

26.     Defendant Loren Singletary ("Singletary") is a Director of Vanguard.  Defendant Singletary signed the false and misleading Registration Statement.

27.     The defendants named above in ¶¶14-20 are collectively referred to herein as the "LRR Energy Defendants."

28.     The defendants named above in ¶¶21-26 are collectively referred to herein as the "Vanguard Defendants."

29.     The defendants named above in ¶¶15-20 are collectively referred to herein as the "LRR Energy Individual Defendants."

30.     The defendants named above in ¶¶22-26 are collectively referred to herein as the "Vanguard Individual Defendants."

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), on behalf of himself and all other public unitholders of LRR Energy that have been or will be harmed by defendants' conduct described herein (the "Class").  Excluded from the Class are defendants and any individual or entity affiliated with any defendant.

32.     This action is properly maintainable as a class action under Rule 23.

33.     The Class is so numerous that joinder of all members is impracticable.  According to the Merger Agreement, there were over twenty-eight million LRR Energy common units outstanding as of April 17, 2015.

34.     There are questions of law and fact that are common to all members of the Class and predominate over questions solely affecting individual Class members.   Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act and/or the 1934 Act, and SEC Rule 14a-9 promulgated thereunder;

(b)     whether the Registration Statement and/or the Proxy were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and;

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

35.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

36.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately represent and protect the interests of the Class.

37.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

38.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39.     Defendants have acted, or failed to act, on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## BACKGROUND TO THE MERGER

40.     Headquartered in Houston, Texas, LRR Energy was a Delaware limited partnership formed in April 2011 by Lime Rock Management LP, an affiliate of Lime Rock Resources to operate, acquire, exploit, and develop oil producing and natural gas properties in North America with long-lived, predictable production profiles.   LRR Energy's properties consisted of mature, low-risk onshore oil and natural gas reservoirs across: (i) the Permian Basin region in West Texas and Southeast New Mexico; (ii) the Mid-Continent region in Oklahoma and East Texas; and (iii) the Gulf Coast region in Texas.   LRR Energy's units were listed and traded on the New York Stock Exchange ("NYSE") under the symbol "LRE."

41.     Also headquartered in Houston, Texas, Vanguard is a publicly traded limited liability company focused on the acquisition and development of mature, long-lived oil and natural gas properties in the United States.   Vanguard was formed in October 2006 and

completed its initial public offering in October 2007.  Its common units are listed on the NASDAQ under the symbol "VNR."  The company's Series A, Series B and Series C Cumulative Preferred units are also listed on the NASDAQ under the symbols "VNRAP," "VNRBP" and "VNRCP," respectively.

42.     LRR Energy had demonstrated impressive financial performance prior to the Acquisition with Vanguard despite the significant downturn in commodity prices.  For example, on April 30, 2015, the Company announced that revenues for the first quarter of 2015 skyrocketed 39.1% to $36.2 million compared to the first quarter of 2014.  Additionally, the Company announced that it had beat consensus analyst estimates for sales in three out of the past four quarters, and easily surpassed earnings estimates in both of its last two quarters.  In fact, two quarters earlier, the Company was expected to earn just $0.32 per unit, while LRR Energy announced that it had actually generated earnings of $0.36 per unit, beating expectations by more than 12.5%.  Further, during the most recent quarter prior to the Acquisition, the Company forecasted earnings of just $0.24 per unit, but actually delivered earnings of $0.45 per unit, exceeding expectations by a staggering 87.5%.

43.     Prior to the Acquisition, LRR Energy was well insulated from the market tumult caused by plunging commodity prices due to its best-in-class book of hedges, which covered millions of barrels of future production at average floor prices of $82.26-$93.16 for oil, $4.28-$5.72 for natural gas and $34.46 for natural gas liquids.  This represented a substantial majority of LRR Energy's expected production between 2015 and 2018.[5]  The fair value of these irreplaceable and best-in-class commodity hedge derivatives alone, which locked-in

---

[5] *See* LRR Energy, L.P., Annual Report (Form 10-K), at 68-69 (for the period ending December 31, 2014).

approximately 89% of LRR Energy's natural gas production and 80% of oil production through 2018 at prices much higher than market, amounted to more than $90 million as of March 31, 2015.[6]  LRR Energy also was well-positioned to capitalize on the next upswing in energy prices given the Company's recent growth and impressive reserve increases prior to the Acquisition.  In fact, as of December 31, 2014, LRR Energy had a remarkable 33.8 million barrels of oil equivalent ("MMBoe") of estimated proved reserves, of which approximately 88% were proved developed reserves.   Additionally, during fiscal year 2014, the Company's proved reserves increased 12% compared to 2013.  Notably, this figure excluded the reserve additions associated with LRR Energy's successful multi-million dollar acquisition of new oil and gas properties in the Mid-Continent region of Oklahoma, which the Company successfully closed on October 1, 2014.  In fact, after the Acquisition was announced, Vanguard's Executive Vice President and Chief Financial Officer, defendant Robert, boasted on a May 26, 2015 conference call, that upon the closing of the deal, Vanguard will be "well positioned when the commodity price recovers."

44.    LRR Energy's strong financial performance made the Company a reliable source of consistent cash distributions for its investors prior to the Acquisition with Vanguard.  Indeed, LRR Energy's financial condition allowed it to provide its unitholders with consecutive increases in per-unit cash distributions despite the largest downturn in oil and gas prices in at least the last decade.  Commenting on LRR Energy's success and consistently increasing cash distributions, defendant Mullins told the Company's investors on October 30, 2014, during the Company's earnings call for the third quarter of fiscal year 2014, that:

---

[6] *See* LRR Energy, L.P., Quarterly Report (Form 10-Q), at 1 (for the period ending March 31, 2015); *see also* Press Release, LRR Energy, L.P., Vanguard Natural Resources Announces Deal to Acquire LRR Energy for $539 Million and Conference Call to Discuss Transaction (Apr. 20, 2015) (announcing the merger with LRR Energy).

> Our Board of Directors declared ***an increase in our per unit distribution*** for the third quarter, bringing our current distribution to $49.75 per unit or $1.99 per unit on an annualized basis. ***The distribution will be paid on November 14, 2014, and represents our ninth consecutive quarterly distribution increase***.

During the same earnings call, Jaime R. Casas ("Casas"), Chief Financial Officer, Vice President, and Secretary of LRE GP, echoed defendant Mullins' comments, and similarly discussed the Company's ability to consistently deliver cash distribution payments, telling LRR Energy investors:

> In terms of our distribution strategy … you can see that … ***we have had distribution increase which is consistent with our distribution strategy***. ***We want to provide our investors with a consistent source of cash flow and distributions.***

45.     Despite the dramatic downturn in commodities prices, LRR Energy provided consistently strong financial results and increased distributions prior to the Acquisition. The Company's ability to deliver its consistent cash distributions and strong standalone performance was the result of LRR Energy's well-established commitment to maintaining a conservative balance sheet with minimal levels of debt. In fact, the LRR Energy Defendants repeatedly told investors that the Company's strong performance and ability to execute on its "distribution strategy" were predicated on LRR Energy's fidelity to a conservative capital structure that avoided crushing levels of debt. Speaking on May 22, 2014, at the National Association of Publically Traded Partnerships MLP Investor Conference, defendant Mullins told conference attendees and LRR Energy investors that:

> In terms of our balance sheet, ***we want to keep a conservative balance sheet***. We use a little bit of leverage. We like to use our debt-to-EBIDTA coverage ratio as a proxy; ***and we like to keep that around or below that 3 times coverage ratio***.

Speaking at the same investor conference, Casas offered similar comments about LRR Energy's established strategy of avoiding debt in order to deliver strong performance, stating:

So our strategy is we want to **maintain a simple straight forward capital structure and very conservative**.  As [defendant Mullins] mentioned, **our goal is to stay under 3 times levered**.

46.   On September 23, 2014, the LRR Energy Defendants again discussed the relationship between LRR Energy's conservative capital structure and the Company's ability to deliver consistently larger cash distributions and strong performance for its investors.  Speaking to attendees and investors at an Independent Petroleum Association of America conference in San Francisco, Casas described LRR Energy's "long-term" commitment to a conservative capital structure and the success realized by this strategy, noting:

> **We are committed to maintaining a very strong and simple balance sheet**.  We want to target kind of a three times leverage ratio.  There will be times when we go higher than that right after an acquisition.  But long-term you should expect us to get back down to at least three times levered…. **[W]e are obviously committed to issue a balanced amount of both equity as well as debt.**

47.   Although LRR Energy's conservative approach to debt allowed the Company to deliver strong performance and make consistent cash distributions in an unfavorable market environment, the LRR Energy Defendants nonetheless agreed to enter into the Acquisition with Vanguard.  On April 20, 2015, LRR Energy issued a press release announcing the terms of the Acquisition.  The press release stated, in relevant part:

**Vanguard Natural Resources Announces Deal to Acquire LRR Energy for $539 Million and Conference Call to Discuss Transaction**

HOUSTON--(BUSINESS WIRE)--Apr. 20, 2015-- Vanguard Natural Resources, LLC (NASDAQ:VNR) ("Vanguard" or "the Company") and LRR Energy, L.P. (NYSE:LRE) today announced that they have entered into a Purchase Agreement and Plan of Merger pursuant to which a subsidiary of Vanguard will merge into LRR Energy, L.P. and, at the same time, Vanguard will acquire LRE GP, LLC, the general partner of LRR Energy, L.P. (collectively, "LRR Energy", or "LRE") for total consideration of $251 million in Vanguard common units and the assumption of LRE's net debt of $288 million. As a result of the transaction, LRR Energy and its general partner will become wholly owned subsidiaries of Vanguard. The transaction, which has been approved by the boards of directors of both companies, including the Conflicts Committee of the Board of Directors of

LRR Energy, will be a tax-free unit-for-unit transaction with an exchange ratio of 0.55 Vanguard common units per LRE common unit. In addition, Vanguard will acquire all of the limited liability company interests in LRE GP, LLC in exchange for 12,320 Vanguard common units. The consideration to be received by LRE unitholders is valued at $8.93 per LRR Energy common unit based on Vanguard's closing price as of April 20, 2015, representing a 13% premium to LRR Energy's closing price on April 20, 2015, and a 19% premium to LRR Energy's ten day volume weighted average price. Vanguard and LRR Energy expect the transaction to close in the third quarter of 2015. The merger is subject to customary closing conditions, including the approval of the LRR Energy unitholders. Affiliates of Lime Rock Resources, LRE's largest unitholder (owning over 30 percent of its outstanding equity), have agreed to support and vote in favor of the transaction.

Scott W. Smith, Vanguard's President and Chief Executive Officer commented, "The transaction we announced today is a great opportunity for the Company and our unitholders. The assets being acquired are attractive bolt-ons to our Permian and Arkoma basin operations and have an inventory of development projects that generate good returns even in the current commodity environment. We believe this transaction should have a positive impact on all aspects of our business. We look forward to welcoming the existing LRE unitholders into Vanguard."

Eric Mullins, Chairman and Co-Chief Executive Officer of LRR Energy commented, "We are pleased to announce our pending merger with Vanguard. We have great respect for Vanguard's management team, which has a strong track record of creating value for its unitholders." Charlie Adcock, Co-Chief Executive Officer of LRR Energy, noted, "We believe the transaction is compelling for LRR Energy unitholders for many reasons and that the strategic combination will deliver significant value in the future for our unitholders."

**Transaction Highlights**

- LRE's long-life, low-decline, mature assets are well-suited for Vanguard's upstream MLP Model;

- Proved R/P of approximately 14 years;

- Balanced production and reserves product mix of 39% oil; 48% natural gas and 13% natural gas liquids;

- Assets add additional scale in Vanguard's existing Permian and Arkoma Basins;

- Properties more than 85% operated as measured by proved reserves;

- Significant potential for cost savings through G&A synergies;

- Strong commodity price hedge book with approximately 89% of natural gas and 80% of oil proved developed production hedged through 2018;

- Production of approximately 40 MMcfe/d, increasing Vanguard's current production by 10%;

- Proved reserves at December 31, 2014 (SEC pricing) of approximately 203 Bcfe, increasing Vanguard's estimated proved reserves by 10%;

- Approximately 1,290 gross producing wells and approximately 158,000 net acres; and

- The transaction is expected to be immediately accretive to distributable cash flow per unit.

**Transaction Benefits to LRE Unitholders**

- Unit price premium;

- Significantly larger and more geographically diverse asset base;

- Expected material operating and cost synergies;

- Stronger financial position and better access to capital markets;

- ***Enhanced distribution stability, coverage and growth potential;***

- Ability to participate in the future growth and upside of the combined company; and

- Improved unit trading liquidity.

**THE FALSE AND MATERIALLY MISLEADING
REGISTRATION STATEMENT AND PROXY**

48.     Subsequent to the announcement of the Acquisition, the Vanguard Defendants began disseminating the false and misleading Registration Statement, while the Vanguard Defendants and LRR Energy Defendants jointly disseminated the false and misleading Proxy.

49.     Specifically, as set forth below, the Vanguard Defendants filed with the SEC on June 3, 2015, a Form S-4 Registration Statement under the Securities Act of 1933.   The Vanguard Defendants filed Amendment No. 1 to the Registration Statement with the SEC on

July 9, 2015.  The Vanguard Defendants filed Amendment No. 2 to the Registration Statement with the SEC on July 24, 2015.  The Vanguard Defendants filed Amendment No. 3 to the Registration Statement with the SEC on August 7, 2015.  The Vanguard Defendants filed Amendment No. 4 to the Registration Statement with the SEC on August 20, 2015.  The Vanguard Defendants filed Amendment No. 5 to the Registration Statement with the SEC on August 31, 2015.  The Vanguard Defendants filed the effective Registration Statement with the SEC on September 3, 2015, and thereafter distributed it to LRR Energy unitholders.  Each version of the Registration Statement was signed by defendants S. Smith, Robert, Anderson, McCullough, and Singletary.

50.     Simultaneously with the filing of the effective Registration Statement with the SEC on September 3, 2015, the Vanguard Defendants and the LRR Energy Defendants jointly filed and disseminated the Proxy to LRR Energy unitholders.

### *Disclosure Deficiencies Concerning the Vanguard Financial Projections*

51.     The initial Registration Statement, as well as Amendment No. 1, Amendment No. 2, Amendment No. 3, and Amendment No. 5 thereto, and the effective Registration Statement, all contain an identical set of financial projections for Vanguard for fiscal years 2015 – 2019 (the "Vanguard Financial Projections").[7]  The Proxy also contains the same set of Vanguard Financial Projections.[8]

---

[7] *See* LRR Energy, L.P., Registration Statement (Form S-4), at 127 (June 3, 2015); LRR Energy, L.P., Amendment No. 1 to Form S-4 Registration Statement (Form S-4/A), at 128 (July 9, 2015); LRR Energy, L.P., Amendment No. 2 to Form S-4 Registration Statement (Form S-4/A), at 128 (July 24, 2015); LRR Energy, L.P., Amendment No. 3 to Form S-4 Registration Statement (Form S-4/A), at 128 (Aug. 7, 2015); LRR Energy, L.P., Amendment No. 5 to Form S-4 Registration Statement (Form S-4/A), at 129-30 (Aug. 31, 2015).

[8] *See* LRR Energy, L.P., Schedule 14A Proxy Statement (Form DEFM14A), at 129 (Sept. 3, 2015).

52.     Significantly, the Registration Statement and Proxy characterize the Vanguard Financial Projections as Vanguard's "***material*** unaudited prospective financial and operating data" and state that they are "based on [Vanguard's] ***then-current*** projections and expectations." However, the Registration Statement and the Proxy failed to disclose Vanguard's inability to satisfy its existing debt covenants based on the "***then-current"*** financial information outlined in the Vanguard Financial Projections.

53.     The omission of this information rendered the following statements in the effective Registration Statement and Proxy false and/or materially misleading in contravention of the 1933 Act and the 1934 Act:

(a)     from pages 129-130 of the Registration Statement and pages 129-130 of the Proxy:

The following table reflects the material unaudited prospective financial and operating data regarding Vanguard's operations provided to the board of directors of LRE GP, the LRE GP conflicts committee, TPH and Simmons in connection with their evaluations of the merger. The data reflects certain oil and gas pricing assumptions of Vanguard.

| | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Average daily production (Mcfe/d) | 380,258 | 375,965 | 374,959 | 376,178 | 378,828 |
| Total revenue ($in millions) | 564 | 573 | 550 | 540 | 556 |
| EBITDA ($in millions) | 373 | 372 | 326 | 309 | 319 |
| Distributable cash flow ($in millions) | 147 | 136 | 83 | 60 | 65 |
| Key Assumption | | | | | |
| Oil Price ($/Bbl) | 55.69 | 62.13 | 63.90 | 64.83 | 65.49 |
| Gas Price ($/Mcf) | 2.82 | 3.11 | 3.36 | 3.48 | 3.58 |

For purposes of the tables set forth above, EBITDA, which Vanguard refers to as Adjusted EBITDA, is defined as net income (loss) plus the following adjustments:

- net interest expense;
- depreciation, depletion, amortization and accretion;
- impairment of oil and natural gas properties;
- net gains or losses on commodity derivative contracts;
- cash settlements on matured commodity derivative contracts;
- net gains or losses on interest rate derivative contracts;
- gain on acquisition of oil and natural gas properties;
- Texas margin taxes; and
- compensation related items, which include unit-based compensation expense and unrealized fair value of phantom units granted to Vanguard's officers.

(b)     from page 25 of the Registration Statement and pages 25-26 of the Proxy:

***Third Amended and Restated Credit Agreement***

On June 3, 2015, Vanguard entered into the Eighth Amendment to its Third Amended and Restated Credit Agreement (the "Amended Agreement") which decreased the borrowing base from $2.0 billion to $1.6 billion. The Amended Agreement however provides for an automatic increase in the borrowing base by $200.0 million upon closing of the merger. In addition, the Amended Agreement includes, among other provisions, the amendment of the debt to "Last Twelve Months Adjusted EBITDA" covenant to be greater than 5.5 to 1.0 in 2015, 5.25 to 1.0 in 2016 and 4.5 to 1.0 starting in 2017 and beyond.

54.     These statements in the effective Registration Statement and Proxy were rendered false and/or misleading by the omissions identified in ¶52 because they failed to disclose that Vanguard would be unable to fulfill its debt obligations based on the "then-current" financial information disclosed in the Vanguard Financial Projections.  Under Vanguard's *existing* debt covenants, the maximum allowable debt to earnings before interest, taxes, depreciation, and amortization ("EBITDA") ratios for 2015 – 2017 were as follows: (i) 5.5 to 1 for 2015; (ii) 5.25 to 1 for 2016; and (iii) 4.5 to 1 for 2017.  With total consolidated debt of almost $1.902 billion as of Q12015, and projected EBITDA for 2015 of $373 million, Vanguard would have had a 2015 debt to EBITDA ratio of approximately 5.1 to 1, just barely within its existing debt covenant.  In 2016, with projected EBITDA of $372 million, and assuming no significant debt reduction, Vanguard's expected debt to EBITDA ratio would be approximately 5.07 to 1, again slightly within its debt covenants.  However, based on Vanguard's current projections for 2017, with projected EBITDA of $326 million, Vanguard's debt to EBITDA ratio will jump to 5.8 to 1, and *result in a significant breach of the company's existing debt covenants*.  Additionally, the Vanguard Financial Projections revealed that the company's debt to EBITDA ratios were slated to be *even worse* for fiscal years 2018 and 2019, and were likely to result in continued breaches of Vanguard's existing debt covenants.[9]

---

[9] An analysis of Vanguard's debt to EBITDA ratios using the post-Acquisition financial information for all three companies (LRR Energy, Vanguard, and Eagle Rock) also demonstrates

55.     It is incontrovertible that this information was material to LRR Energy's former unitholders.  Vanguard's capacity to generate sufficient capital to satisfy its debt obligations directly relates to the company's ability (or present inability) to pay cash distributions to its investors.  In fact, the Registration Statement and Proxy both make clear that "debt service" is a "significant performance metric" that bears directly on whether Vanguard "is generating cash flow at a level that can sustain or support an increase in its monthly distribution rates."  Further, under Vanguard's limited liability company agreement, the company is required to distribute available cash to unitholders only after its "debt service" obligations have been satisfied.

56.     The Registration Statement and Proxy mentioned a host of generalized "risks and uncertainties" that defendants claimed were "beyond" their ability to "control."  These purported "uncertainties" included Vanguard's ability to satisfy its debt obligations and make cash distributions.  However, these boilerplate statements failed to reflect that Vanguard's inability to service its debt was no future uncertainty; it was a present reality crippling the company's balance sheet.  Both the Registration Statement and Proxy failed to disclose that Vanguard was unable to satisfy the company's existing debt covenants based on the "then-current" Vanguard Financial Projections.

***Disclosure Deficiencies Concerning Cash Distributions***

57.     The Registration Statement and Proxy recommended that LRR Energy unitholders vote in favor of the Acquisition based on representations by the LRR Energy Individual Defendants that the sale of the Company would result in cash higher distributions to

---

a breach of the company's debt covenants in 2017.  Therefore, even if Vanguard was able to realize the anticipated "synergies" from the Acquisition, the company's debt to EBITDA in 2017 would still violate applicable debt covenants when Vanguard's assumption of Eagle Rock's $140 million debt is given proper effect.

investors.  These statements in the Registration Statement and Proxy were materially false and misleading because they failed to disclose the impending impact that Vanguard's *existing* debt servicing issues would have on the company's ability to pay cash distributions to unitholders, including former LRR Energy unitholders.

58.     The omission of this information rendered the following statements in the effective Registration Statement and Proxy false and/or materially misleading in contravention of the 1933 Act and the 1934 Act:

(a)     from page 131 of the Registration Statement and page 132 of the Proxy:

**Vangaurd Reasons for the Merger**

***Vanguard believes [LRR Energy's] assets will provide consistent and predictable cash flow volumes that will enable Vanguard to continue to make consistent monthly cash distributions to its unitholders and, over time, improve equity valuation.***

* * *

Vanguard expects to improve a number of its financial ratios commonly used to assess its credit rating.  ***The predominantly unit-for-unit nature of the transaction is expected to allow Vanguard to reduce leverage and strengthen its balance sheet***.  In addition, because size is a key contributor to credit ratings for oil and natural gas exploration and production companies, ***increased scale could result in improved credit ratings for the combined entity, in particular if both the merger and the Eagle Rock merger are consummated.***

(b)     from page 76 of the Registration Statement and page 77 of the Proxy:

**Recommendation of LRE GP's Board of Directors and Its Reasons for the Merger**

* * *

The board of directors of LRE GP considered many factors in making its determination and approving the merger agreement and the transactions contemplated thereby…. and viewed the following factors as being generally positive or favorable in coming to its determination and related recommendation:

* * *

- Following the merger, *LRE unitholders will have the opportunity as equity holders to participate in the future growth and expected synergies of the combined entity*;

\* \* \*

- The merger provides LRE unitholders equity ownership in an entity with a larger, more diversified asset base and a lower cost of capital, which is expected to provide greater ability to pursue accretive capital projects and acquisitions that would *provide for greater distribution stability and higher distribution growth*;

- *The belief that the merger should result in an improved potential total return to LRE unitholders, based on the potential future value of the combined entity and potential greater distribution growth;*

    (c)    from page 80 of the Registration Statement and pages 80-81 of the Proxy:

**Reasons of LRE GP's Board of Directors for Consenting to the Eagle Rock Merger**

\* \* \*

The Eagle Rock merger provides Vanguard unitholders (including former LRE unitholders who receive Vanguard common units in the merger) equity ownership in a pro forma entity with a larger, more diversified asset base and a lower cost of capital, which is expected to provide greater ability to pursue accretive capital projects and acquisitions that would *provide for greater distribution stability and higher distribution growth*;

    (d)    from page 83 of the Registration Statement and pages 83-84 of the Proxy:

**Recommendation of the LRE GP Conflicts Committee and its Reasons for the Merger**

The LRE GP conflicts committee considered many factors in making its determination and approving the merger. The LRE GP committee consulted with its financial and legal advisors and viewed the following factors as being generally positive or favorable in coming to its determination and related recommendation to the board of directors of LRE GP:

\* \* \*

- The LRE GP conflict committee's belief that the combined entity *offered better prospects for distribution growth* than did LRE[.]

59.     These statements in the Registration Statement and Proxy were rendered materially false and/or misleading by the omissions identified in ¶57 because they failed to disclose the effect of Vanguard's debt servicing crisis on the company's ability to pay the "higher" distributions that were repeatedly touted to LRR Energy unitholders prior to the close of the Acquisition.  Tellingly, both the Registration Statement and Proxy omitted that—based on the "then-current" Vanguard Financial Projections—the company's existing debt obligations would prevent it from offering unitholder distributions at even historical rates.

60.     Indeed, just two months after the LRR Energy Acquisition closed, Vanguard was forced to announce drastic cuts to common unitholder distributions, including LRR Energy's former unitholders.  On December 18, 2015, Vanguard issued a press release, stating in relevant part:

> **Vanguard Natural Resources, LLC Announces Reduction in Common Unit Distributions and No Change to Preferred Unit Distributions**
>
> Vanguard Natural Resources, LLC (NASDAQ: VNR) ("Vanguard") has declared a cash distribution attributable to the month of November 2015 of $0.03 per common unit *($0.36 per unit on an annual basis)* payable on January 14, 2016 to common unitholders of record on January 4, 2016.  *This distribution level represents an approximate 75% reduction from the $0.1175 per common unit monthly distribution ($1.41 per common unit on an annual basis) paid last month.*  Based on yesterday's closing price of $2.89, the new distribution provides a current yield of 12.5%.

61.     In the same press release, Vanguard also disclosed the reason it was slashing its unitholders distributions—the company's imminent debt crisis.  Indeed, Vanguard was forced to reduce its unitholder distributions by as much as 75% in order to service its existing debt covenants.  As the December 18, 2015, press release goes on to admit:

> Scott W. Smith, President & CEO of Vanguard commented: "Given the current commodity and capital markets environment, *we believe the most prudent strategy is to reduce the cash distribution payout on our common units*.  Lowering the common unit distribution from $1.41 annualized to $0.36

annualized reduces the cash required for distributions from approximately $185 million to $47 million. ***Excess cash flow that is generated by this action will be directed at paying down debt under Vanguard's revolving credit facility and is expected to result in significant distribution coverage in both 2016 and 2017 based on current commodity strip prices.*** We believe it is in the best long-term interest of the Company to redirect our excess cash flow in this manner and better position Vanguard when a commodity price recovery occurs in the future."

62.     Since then, Vanguard's debt crisis has only continued to worsen.  On March 4, 2016, Vanguard reported its financial results for fiscal year 2015 in a press release to investors. Alongside disappointing financial results, the company delivered the shocking news that Vanguard's board of directors voted to suspend ***all*** cash distributions on both common and preferred units.  In the same press release, defendant S. Smith acknowledged that Vanguard was forced to "***take further actions to strengthen [the company's] balance sheet by retaining our cash flows.***"  Defendant S. Smith also admitted that Vanguard's decision to suspend all cash distributions to investors was aimed at "***reducing our debt in 2016.***"  Finally, defendant S. Smith offered no indication when Vanguard would resume its cash distributions to investors.[10]

63.     The foregoing demonstrates that the Registration Statement and the Proxy were false and misleading, as Vanguard's imminent debt crisis and the corresponding impact on the company's cash distributions were material to LRR Energy investors, when deciding how to vote on the Acquisition.

64.     The fundamental importance of information relating to a company's ability to offer cash distributions is underscored by numerous authorities.  According to an "Energy MLP

---

[10] Vanguard's debt crisis is so severe that it decided to divest its oil, natural gas, and liquid gas assets in the SCOOP/STACK area of Oklahoma in order to reduce borrowings under the company's credit facility.  On May 19, 2016, Vanguard announced that it had completed the divesture of its SCOOP/STACK assets and that the proceeds from the transaction would be used for the "repayment of outstanding debt."  *See* Vanguard Natural Resources, LLC, Current Report (Form 8-K/A), at Exhibit 99.2 (May 19, 2016).

Primer" prepared by Bank of America—Merrill Lynch analysts, "*[t]he most relevant metric for MLPs is distributable cash flow (DCF)*" because it is this metric "*which sets the appropriate level for distributions*" to investors.[11]   In a March 2015 article entitled "OFI Steelpath MLP Primer," published by Oppenheimer Funds, the authors similarly conclude that "*many investors are attracted by the cash flow from MLP distributions*," and further note that "*investor interest in any given partnership is predicated on cash distributions that are consistently paid out* in the same manner that a corporate board sets a dividend policy."[12]   This sentiment was also reflected in Morgan Stanley's "Midstream Energy MLPS Primer 3.0" which also concludes that "Distributable Cash Flows (DCF) is *a key metric*" for investors.

65.     The importance of distribution information was also recently emphasized in a client note published by Vinson & Elkins LLP ("Vinson & Elkins"), counsel to the Vanguard Defendants.  According to the client note, entitled "Thoughts for Officers and Directors of MLPs in 2016," Vinson and Elkins states:

> [B]ecause *an MLP's distribution is viewed as a key investment criterion by analysts and investors, we recommend a careful review of prior public guidance regarding distributions and liquidity.*  To the extent that current market and industry conditions would result in different disclosures today, appropriately updating those disclosures should receive significant focus for the year-end earnings and financial reporting season.  Disclosures should be carefully drafted to include discussions of necessary assumptions and appropriate caveats regarding potential factors that could impact distribution decisions going forward.

66.     The materiality of Vanguard's debt crisis and its inability to pay distributions is further highlighted by the fact that LRR Energy unitholders enjoyed consistent and increasing

---

[11]   *See* Bank of America-Merrill Lynch, Energy MLP Primer, Aug. 2, 2013, http://www.merrilledge.com/publish/content/application/pdf/gwmol/EnergyMLPPrimer.pdf.

[12]   *See* Oppenheimer Funds, *OFI Steelpath MLP Primer*, https://www.oppenheimerfunds.com/investors/doc/SteelPath_MLP_Primer.pdf.

cash distributions prior to the Acquisition.  As discussed above, LRR Energy's distributions were possible because of the Company's long-term commitment to a healthy capital structure with very minimal levels of debt.  This foundation of LRR Energy's success was well-known to its investors and was repeatedly communicated by the LRR Energy Defendants prior to the Acquisition.  Nonetheless, the LRR Energy Defendants recommended that unitholders vote in favor of the Acquisition "based on the potential future value of the combined entity and ***potential greater distribution growth***."  Accordingly, the drastic cuts (and later complete suspension) of distributions—which are expected to continue "in both 2016 and 2017"—and Vanguard's potential inability to satisfy its existing debt covenants, was information that was highly material to LRR Energy unitholders when deciding whether to approve the Acquisition.

67.     In sum, the Registration Statement and Proxy were false and misleading.  The LRR Energy and Vanguard Individual Defendants named herein failed to make a reasonable investigation into Vanguard's financials and did not possess reasonable grounds for the belief that the statements contained in the Registration Statement and Proxy were true, without omissions of any material facts, and not misleading.  And LRR Energy's former unitholders have been substantially damaged as a result of defendants' wrongdoing.

## COUNT I

### Against the Vanguard Defendants for Violation of Section 11 of the 1933

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     This Count is brought pursuant to section 11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against the Vanguard Defendants.  This is a non-fraud cause of action. Plaintiff does not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

70.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

71.     The Vanguard Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

72.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

73.     By reason of the conduct herein alleged, each of the Vanguard Defendants violated, and/or controlled a person who violated, section 11 of the 1933 Act.

74.     Plaintiff acquired Vanguard common units traceable to the offering of Vanguard units in connection with the LRR Energy merger.

75.     By reason of the conduct herein alleged, Plaintiff and the Class have sustained damages.

76.     At the time of the merger, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Plaintiff commenced this action.  Less than one year has elapsed between the time that the securities upon which this Count is brought were offered to the Plaintiff and the Class and the time Plaintiff commenced this action.

## COUNT II

### Against the Vanguard Defendants for Violations of Section 15 of the
### 1933 Act

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     This Count is brought pursuant to section 15 of the 1933 Act, 15 U.S.C. §77o, against the Vanguard Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

79.     Defendants S. Smith, Robert, Anderson, McCullough, and Singletary each were control persons of Vanguard by virtue of their positions as directors and/or senior officers of Vanguard.  Defendants S. Smith, Robert, Anderson, McCullough, and Singletary each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers of Vanguard.  The Company controlled defendants S. Smith, Robert, Anderson, McCullough, and Singletary, and all of Vanguard's employees.

80.     The defendants identified in the First Count were culpable participants in the violations of section 11 of the 1933 Act, based on the allegations herein, including, but not limited to, their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the offering of Vanguard units in connection with the LRR Energy merger to be successfully completed.

## COUNT III

### Against All Defendants for Violation of Section 14(a) of the Exchange Act and Rule 14a9
### Promulgated Thereunder

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     The Proxy was prepared, reviewed, and/or disseminated by defendants.   The Proxy was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.   This is a non-fraud cause of action.   Plaintiff does not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

83.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Proxy were true and without omissions of any material facts and were not misleading.

84.     By reason of the foregoing, defendants have violated section 14(a) of the 1934 Act, 15 U.S.C. §78n(a), and SEC Rule 14a-9(a) promulgated thereunder.

85.     By reason of the conduct herein alleged, Plaintiff and the Class have sustained damages.

## COUNT IV

### Against the LRR Energy and Vanguard Individual Defendants for Violation of Section 20(a) of the Exchange Act

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     The LRR Energy Individual Defendants acted as controlling persons of LRR Energy within the meaning of section 20(a) of the Exchange Act as alleged herein.   Vanguard Individual Defendants S. Smith, Robert, Anderson, McCullough, and Singletary acted as controlling persons of Vanguard within the meaning of section 20(a) of the 1934 Act as alleged herein.   These defendants had the power to influence and control and did influence and control,

directly or indirectly, the dissemination of the Proxy which Plaintiff contends is false and misleading.

88.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of LRR Energy and/or Vanguard, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the LRR Energy and Vanguard Individual Defendants to approve the acquisition.  They were thus directly involved in the making of this document.

89.     Vanguard and LRR Energy also had direct supervisory control over composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

90.     By virtue of the foregoing and their positions as control persons, defendants have violated section 20(a) of the 1934 Act.  This is a non-fraud cause of action.  Plaintiff does not assert that defendants committed intentional or reckless misconduct or that defendants acted with scienter or fraudulent intent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands relief, in plaintiff's favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Granting such other and further equitable and monetary relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 22, 2016                          **COOCH AND TAYLOR, P.A.**

                                              */s/ Blake A. Bennett*
                                              Blake A. Bennett (#5133)
                                              The Brandywine Building
                                              1000 West Street, 10th Floor
                                              Post Office Box 1680
                                              Wilmington, DE 19899
                                              Telephone: (302) 984-3800
                                              Facsimile: (302) 984-3939
                                              bbennett@coochtaylor.com

                                              *Attorneys for Plaintiff*

**OF COUNSEL:**

**ROBBINS ARROYO LLP**
Brian J. Robbins
Felipe J. Arroyo
Stephen J. Oddo
Nichole T. Browning
Jenny L. Dixon
600 B Street, Suite 1900
San Diego, CA  92101
Telephone: (619) 525-3900
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
farroyo@robbinsarroyo.com
soddo@robbinsarroyo.com
nbrowning@robbinsarroyo.com
jdixon@robbinsarroyo.com

**VITA LAW OFFICES P.C.**
Richard J. Vita
100 State Street, 9th Floor
Boston, MA 02109
Telephone: (617) 426-6566
Facsimile: (617) 249-2119
rjv@vitalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2016, I electronically filed a true copy of the above document with the Clerk of Court using CM/ECF which will send notification of such filing to those registered as CM/ECF participants.

I hereby certify that on June 22, 2016, I have caused to be sent via certified mail and electronic mail, a true copy of the above document to the following non-registered participants:

James Edward Maloney
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, TX 77002
jamesmaloney@andrewskurth.com

*Attorneys for defendants Eric Mullins, Charles W. Adcock, Jonathan C. Farber, Townes F. Pressler, Jr., John A. Bailey, and Jonathan P. Carroll*

Michael C. Holmes
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
mholmes@velaw.com

*Attorneys for defendants Vanguard Natural Resources, LLC, and Lighthouse Merger Sub, LLC*

LRR Energy, L.P.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

Scott W. Smith
12014 Pebble Hill Dr
Houston, TX 77024

Richard A. Robert
11639 Versailles Lakes Ln
Houston, TX 77082

W. Richard Anderson
1217 Bell Rd
Trinity, TX 75862

Bruce W. McCullough
2714 Warwick Way
Grapevine, TX 76051

Loren Singletary
1242 Place Royale Way
Houston, TX 77056

/s/ Blake A. Bennett
Blake A. Bennett (#5133)
*Attorneys for Plaintiff*